**James F. CLAUSON, Appellant,**

**v.**

**Dorothy F. CLAUSON, Appellee.**

**No. S-4150.**

Supreme Court of Alaska.

May 8, 1992.

William T. Ford, Anchorage, for appellant.

Timothy E. Troll, Roger H. Beaty, Beaty, Draeger, Locke & Troll, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

James Clauson appeals a superior court order requiring him to pay his former wife, Dorothy Clauson (now Dorothy Crabtree), $168 per month to replace her share of his waived military retirement pay. Four years after the parties stipulated to a marital property settlement in which Dorothy was awarded a portion of James' military pension, James elected to waive his military pension in order to collect veterans disability benefits. The waiver resulted in Dorothy's payments ceasing and led her to seek a modification of the divorce judgment.

James challenges both the procedural and substantive aspects of the modification order. The threshold procedural issue concerns Dorothy's entitlement to relief from a final property settlement judgment. If, upon remand, the trial court finds that Dorothy's motion was timely filed, we conclude that the circumstances presented here support Civil Rule 60(b)(6) relief from judgment.

The substantive question we must address is whether the Uniformed Services Former Spouses' Protection Act (USFSPA),[1] as it has been interpreted in *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1988), precludes state courts from considering a former spouse's military disability benefits received in lieu

1. 10 U.S.C. § 1408 (1983 ed. and Supp.1991).

of waived retirement pay when making an equitable division of marital assets. The *Mansell* holding clearly prohibits state courts from treating veterans' disability pay as divisible property upon divorce. However, the Supreme Court's interpretation of the USFSPA does not require our courts to entirely disregard this source of post-divorce income in effecting an equitable distribution of the parties' assets.

Alaska Statute 25.24.160(a)(4) (1991) requires a trial court to "fairly allocate the economic effect of divorce" based, *inter alia,* on the earning capacity and financial condition of the parties involved. Since the waiver of retirement pay and collection of disability benefits clearly affects James and Dorothy's relative financial positions, Dorothy is entitled to a redistribution of the marital estate under these new circumstances.

Nevertheless, in the case at bar, the trial judge simply ordered James to pay an amount equivalent to Dorothy's share of the waived retirement pension as if the waiver had never occurred. The effect of the modification order was to award Dorothy a portion of James' disability benefits. The order, therefore, runs afoul of the holding in *Mansell* and, consequently, the Supremacy Clause of the federal constitution. We vacate the modification order and remand the case for a hearing to reconsider an equitable division of the parties' marital assets in light of the new circumstances.

## I

Dorothy and James were married in Texas in 1958 and divorced in Alaska in 1984. The parties entered into a stipulated property settlement at the time of their divorce that provided, in part:

> A. Plaintiff shall receive:
>
> ....
>
> (iv) 13/40 of Defendant's current military pension and increases therein, which will currently entitle her to approximately $150.00 per month, which sum shall be paid directly to her by the Department of Defense for the rest of her natural live (sic), or the natural life of defendant, whichever event occurs first.

James' pension was part of a marital estate which included automobiles and some real estate. Both parties were represented by counsel during the divorce proceeding. The trial court accepted the parties' stipulated findings of fact and conclusions of law and stated in the divorce decree that "the division of the parties' property is found to be fair and equitable."

Four years later, James elected to waive all of his military retirement pension in order to receive disability benefits.[2] Dorothy had been receiving $168 per month from the federal government as her share of the pension. After the waiver, the payments stopped.

On May 23, 1990, Dorothy filed a "Motion to Amend [the] Decree of Divorce." The motion and its supporting memorandum did not cite any statute or rule of civil procedure authorizing a court to amend a property settlement included in a final divorce decree. James, citing *Mansell,* opposed Dorothy's motion but did not challenge her right to modify a final property settlement. Even so, in her reply to the opposition, Dorothy maintained that James' waiver of his retirement pay, which terminated her own interest in this benefit, "is a change of circumstances under AS 25.24.170[3] and in addition constitute[d] a destruction of the Court's original finding

**2.** James states in his brief that he "suffered from a multiple arthritic condition which was determined by the Veteran's Administration to be service-connected." For those eligible, former service personnel who elect to receive disability pay in lieu of retirement pay can obtain certain tax advantages.

The Supreme Court explains:

> In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. [38 U.S.C.] § 3105. Because disability benefits are exempt from federal, state, and local taxation, [38 U.S.C.] § 3101(a), military retirees who waive their retirement pay in favor of disability benefits increase their after tax income.

*Mansell,* 490 U.S. at 583–84, 109 S.Ct. at 2025–26.

**3.** This statute allows for the modification of alimony and maintenance judgments but does

in its Divorce Decree that the property division was fair and equitable." There is no record that James objected to Dorothy's motion on procedural grounds at any stage of the proceedings below.

Dorothy requested oral argument to resolve the legal issues in the case, but it appears that no hearing took place. In August 1990, Judge Carlson signed an order requiring James to pay Dorothy:

> the sum of $168 per month for the months of December 1989 through May 1990 in the total amount $888 for past payments due. Future payments of $168 per month beginning June 1990, or such amount as is due pursuant to the Divorce Decree in the event Defendant's retirement pay has increased, shall also be paid by Defendant to Plaintiff.

The modification order contained no supporting findings of fact or conclusions of law. James now appeals.

II

1. *Do the circumstances of this case justify relief from judgment under Civil Rule 60(b)(6)?* [4]

James argues on appeal that Dorothy is not entitled to modify the final divorce decree because she has not established "extraordinary circumstances" justifying relief from judgment as required by Civil Rule 60(b)(6). *See Lowe v. Lowe,* 817 P.2d 453 (Alaska 1991); *Schofield v. Schofield,* 777 P.2d 197 (Alaska 1989); *Foster v. Foster,* 684 P.2d 869 (Alaska 1984).[5] Our prior cases have enunciated four factors constituting extraordinary circumstances justifying relief, under Rule 60(b)(6), from a property division:

> Those factors [a]re: (1) the fundamental, underlying assumption of the dissolution agreement ha[s] been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [asset in controversy] was the parties' principal asset.

*Lowe* at 458–59. If, as James assumes, the presence of all four factors is necessary to support a finding of "extraordinary circumstances," then Dorothy would not be entitled to modify her divorce decree because few, if any, of these factors are present in this case.

However, we have never held that all of these factors are essential for a find-

not authorize a court to modify a decree as it relates to property rights. *See* AS 25.24.170 (1991); *see also Allen v. Allen,* 645 P.2d 774 (Alaska 1982). On appeal, Dorothy analogizes monthly pension payments to alimony payments and then argues that the decree should be modifiable under AS 25.24.170. However, despite the fact that retirement pensions, military or otherwise, are paid out on a monthly, prospective basis, pensions are property and decrees resolving rights to property are modifiable only to the extent that relief may be obtained from any other final judgment. *See Lowe v. Lowe,* 817 P.2d 453, 456 (Alaska 1991) ("As this is not an initial adjudication of the parties' property rights [in a military pension], relief may be granted only within the parameters of Civil Rule 60(b).").

4. We will not overturn a trial court's decision to modify a decree adjudicating property rights except upon a showing that the court abused its discretion. *Schofield v. Schofield,* 777 P.2d 197, 202 (Alaska 1989). "On the other hand, whether the trial court applied the appropriate legal standard in exercising its broad discretion is a question of law regarding which this court may substitute its independent judgment." *Laing v. Laing,* 741 P.2d 649, 651 (Alaska 1987).

5. Although James did not raise this procedural argument below, he may raise it on appeal because under Civil Rule 6(b), the superior court lacks subject matter jurisdiction to set aside judgments unless a motion is made within the Rule 60(b) time limits. *See Lowe,* 817 P.2d at 457. Civil Rule 60(b)(6) requires a motion to be filed within a "reasonable time" stating "any ... reason justifying relief from the operation of the judgment." Here Dorothy filed a motion to modify the decree but never explicitly denominated it as a 60(b) motion. The trial court, in its order, also failed to base its modification on Rule 60(b). Nevertheless, Dorothy's motion can, at least implicitly, be considered a 60(b) motion as it provides a "reason justifying relief from the operation of the judgment." Civil Rule 60(b)(6). It also may have been filed within a reasonable time. *See Lowe,* 817 P.2d at 459 (four and a half years not per se unreasonable). However we need not decide this issue at the present time. On remand, the superior court should treat this as a Rule 60(b)(6) motion to modify the parties' earlier division of property and make appropriate findings as to the timeliness of the motion.

ing of "extraordinary circumstances." Rule 60(b)(6) is, after all, a catch-all provision and "should be liberally construed to enable court's to vacate judgments *whenever* such action is necessary to accomplish justice." *O'Link v. O'Link,* 632 P.2d 225, 230 (Alaska 1981) (emphasis added). The four factors which we have cited in previous cases are not strictly necessary conditions but, rather, are particular instantiations of the equitable factors required to overcome the principle that, at some point, "litigation [must] be brought to an end." *Lowe,* 817 P.2d at 459 (quoting *Livingston v. Livingston,* 572 P.2d 79, 85 (Alaska 1977)).

In this case, the equities clearly reside with Dorothy. In reality, she is not even seeking to modify the divorce decree. James did that, unilaterally and extrajudicially, when he decided to waive his retirement pension in order to collect disability benefits. Dorothy is merely trying to reestablish the status quo through her motion. Therefore it does not matter whether the first property settlement was well thought out or whether both sides were adequately represented by counsel. The financial loss to Dorothy of her share of James' military pension is not insignificant and likely justifies a redistribution of the parties' marital property.

As we stated in *Norman v. Nichiro Gyogyo Kaisha, Ltd.,* 761 P.2d 713, 717 (Alaska 1988), "[i]n reaching the conclusion that [a party] is entitled to relief from judgment under Rule 60(b)(6) we balance the interest in the finality of judgments against the interest in granting relief from judgment when justice so requires." Since Dorothy is essentially trying to enforce the financial arrangements of the earlier decree, there is very little weight on the "finality" side of the scale. We conclude, therefore, that these circumstances are sufficiently extraordinary to support a 60(b)(6) motion for relief from judgment.

2. *Does federal law preclude the modification of a property settlement to compensate for the loss of military retired pay which has been waived to secure veterans disability benefits?*

The Uniformed Services Former Spouses' Protection Act provides that state courts may treat "disposable retired pay" either as the property of the armed forces member "or as property of the member and his spouse in accordance with the law of the jurisdiction." 10 U.S.C. § 1408(c)(1) (Supp.1991). The USFSPA clearly confers upon state courts the authority to divide military pensions according to applicable state divorce and property laws.[6] *See Chase v. Chase,* 662 P.2d 944, 946 (Alaska 1983).

In *Chase,* we noted that the USFSPA gave state courts "the option to consider military retirement pay in effecting an equitable and just property division." *Id.* We then held that under state law, military pensions are divisible marital property upon dissolution of marriage. *Id.; see also Lang v. Lang,* 741 P.2d 1193, 1196 (Alaska 1987) (trial courts can award a former spouse part of a military pension "if necessary to effectuate an equitable property division").

However in 1989, the United States Supreme Court held that the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans disability benefits." *Mansell,* 490 U.S. at 594–95, 109 S.Ct. at 2031. The majority in *Mansell* reasoned that Con-

6. It is helpful to briefly explain the legal landscape prior to passage of the USFSPA. In 1979, based on our conclusion that federal law "prohibit[ed the] application of state property settlement concepts" in this area, we held that military "retired pay" (i.e. a military pension) was not property which could be divided upon divorce. *Cose v. Cose,* 592 P.2d 1230, 1232 (Alaska 1979). In 1981, the U.S. Supreme Court also ruled that federal law governed the division of military pensions and precluded state courts from dividing military pensions upon divorce. *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The next year, Congress passed the USFSPA, explicitly intending the act to abrogate most preemptive aspects of *McCarty. See* H.R.Conf.Rep. No. 97–749, 97th Cong., 2d Sess. 49, 165–68; S.Rep. No. 97–502, 97th Cong., 2d Sess. 1–5, *reprinted in* 1982 U.S.C.C.A.N 1555, 1569, 1570–73, 1596–1600; *see also Mansell,* 490 U.S. at 583–85, 109 S.Ct. at 2025–26.

gress granted state courts only "limited" authority to divide military benefits when it passed the USFSPA. The Court noted that the language of the statute:

> was both precise and limited. It provided that "a court may treat disposable retired or retainer pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. § 1408(c)(1). The Act's definitional section specifically defines the term "disposable retired or retainer pay" to exclude, *inter alia,* military retirement pay waived in order to receive veterans' disability payments. Thus, under the Act's plain and precise language, state courts ... have not been granted the authority to treat total retired pay as community [or marital] property.

*Id.* at 588–89, 109 S.Ct. at 2028 (footnote omitted). Congress intended the statute, the Court concluded, "both to create new benefits for former spouses and to place limits on state courts designed to protect military retirees." [7] *Id.* at 594, 109 S.Ct. at 2031.

James considers *Mansell* to be dispositive on the substantive issue presented in his appeal. He argues that any adjustment of the parties' marital property settlement would have the effect of dividing his current veterans' disability benefits in direct contravention of the holding in *Mansell.*

There are actually two related but separate questions that must be answered in order to resolve this appeal. The first is whether state courts have any power, after *Mansell,* to equitably divide veterans' disability benefits received in place of waived retirement pay. The answer to that question is an unequivocal no. Despite the fact that *Mansell* involved a community property state, California, which had classified waived retired pay as community property, the *Mansell* holding is equally applicable to equitable distribution states, such as Alaska, which employ an equitable division concept to settle property upon divorce and permit the division of both separate and marital property to achieve an equitable result.[8] *See Mansell,* 490 U.S. at 584 n. 2, 109 S.Ct. at 2026 n. 2. Accordingly, we hold that the USFSPA prohibits our courts from distributing this type of military benefit to a former spouse when allocating property upon divorce.

The second, more difficult question is whether federal law also precludes our courts from considering the economic impact that a waiver of military retirement pay and corresponding receipt of disability pay has on the parties to a divorce. It is clear that, but for federal preemption, state law requires our courts to consider this information in making an equitable allocation of property upon divorce. Alaska Statute 25.24.160(a)(4)(C) & (D) (1991) provides, for example, that the property division "must fairly allocate the economic effect of divorce by being based on consideration of.... the earning capacity of the parties.... [and] the financial condition of the parties."

In recent cases involving federal preemption of state domestic relations law, the Supreme Court, noting the states' paramount role in this area, has refused to override state law unless preemption is "positively required by direct [federal] en-

7. Section 1408 was revised in 1990, but Congress did not address the issues raised by the *Mansell* decision. The section now reads in pertinent part:

> (a)(4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which
>
> ....
>
> (B) are deducted from the retired pay of such member as a result of ... a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;
>
> ....
>
> (c)(1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member ... either as property solely of the member or as property of the member and his spouse in accordance with the laws of the jurisdiction of such court.

10 U.S.C. § 1408 (Supp.1991).

8. *See* AS 25.24.160 (1991); *Carlson v. Carlson,* 722 P.2d 222, 223–24 (Alaska 1986) ("The division of property in a divorce action involves a three-step process. The court 1) determines what property is available for distribution, 2) values the property and 3) determines the most equitable allocation.").

actment" or the particular law does "major damage" to "clear and substantial" federal interests. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979); *see also Mansell,* 490 U.S. at 587, 109 S.Ct. at 2027; *Rose v. Rose,* 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987); *McCarty v. McCarty,* 453 U.S. 210, 220–21, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981).

We are persuaded that neither the USFSPA nor prior Supreme Court decisions require our courts to completely ignore the economic consequences of a military retiree's decision to waive retirement pay in order to collect disability pay. The statute merely speaks to a state court's power to "treat" this type of military benefit "either as property solely of the [armed forces] member or as property of the member and his spouse." 10 U.S.C. § 1408(c)(1) (Supp. 1991). Even the *McCarty* decision, which first found preemption in this area, held only that state courts were precluded from "dividing" retirement pay or "characterizing" such pay as community property based on the fact that "retired pay" was a "personal entitlement" of the armed forces member and that "division of retired pay [wa]s simply inconsistent with th[e] explicit expression of congressional intent that retired pay accrue to the retiree." *McCarty,* 453 U.S. at 224–27, 101 S.Ct. at 2737–38.

We are aware of no federal statute which specifically prohibits a trial court from taking into account veterans' disability benefits when making an equitable allocation of property. *Cf. Hisquierdo,* 439 U.S. at 583–89, 99 S.Ct. at 809–12 (an offset of property for railroad workers' federally protected benefits was inappropriate where statute provided "[n]otwithstanding any other law ... of any State" statute prevented "attachment, or other legal process under any circumstances whatsoever"). Nor do we see how this practice does major damage to clear and substantial federal interests.

In fact, of more relevance to this question than *Mansell,* is the Supreme Court's decision in *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599. In *Rose,* the Court held that anti-attachment provisions and similar restrictions in federal laws governing veterans' disability benefits did not conflict with the enforcement of state child support orders even where disability benefits represented a disabled veteran-obligor's only source of income and would necessarily be used to pay child support. *Id.* at 636, 107 S.Ct. at 2039. The Court specifically noted that such "benefits are intended to support not only the veteran, but the veteran's family as well." [9] *Id.* at 634, 107 S.Ct. at 2038.

Other jurisdictions struggling with these post-*Mansell* issues have generally found that their family law courts are not precluded from considering veterans' disability benefits as they affect spousal maintenance or the equitable allocation of the parties' assets. *See McMahan v. McMahan,* 567 So.2d 976, 980 (Fla.Dist.App.1990) (notwithstanding *Mansell,* state courts may consider the *impact* of veterans' disability payments in determining the "entire equitable distribution scheme ... in an effort to do equity and justice to both [parties]"); *Jones v. Jones,* 7 Haw.App. 496, 780 P.2d 581 (1989) ("Neither Hawaii's rule nor federal law precludes the family court, when dividing property and debts in a divorce case, from considering as one of the relevant circumstances ... a party's time-of-divorce right to receive veterans' and military disability pay post-divorce in the same way that the family court considers each party's ability or inability to earn and receive income post-divorce."); *Weberg v. We-*

9. Under the logic of *Rose,* a state court is clearly free to consider post-divorce disability income and order a disabled veteran to pay spousal support even where disability benefits will be used to make such payments. We, on the other hand, have stated our preference for property disposition over an award of alimony or spousal support. *See Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1981). Therefore, under our marital property scheme, we see no valid reason why veterans disability benefits should not be considered in making an equitable allocation of property and thereby avoid the need to award spousal support. Our approach is, if anything, even more compatible with federal law as it provides a disabled veteran sole possession of his or her disability benefits both in law and in fact.

*berg,* 158 Wis.2d 540, 463 N.W.2d 382 (1990) (trial court may consider veterans' disability payments as a factor in assessing ex-husband's ability to pay spousal maintenance). We similarly hold that federal law does not preclude our courts from considering, when equitably allocating property upon divorce, the economic consequences of a decision to waive military retirement pay in order to receive disability pay.

III

We are aware of the risk that our holding today might lead trial courts to simply shift an amount of property equivalent to the waived retirement pay from the military spouse's side of the ledger to the other spouse's side. This is unacceptable. In arriving at an equitable distribution of marital assets, courts should only consider a party's military disability benefits as they affect the financial circumstances of both parties. Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage.

This is, however, precisely what happened in the case before us. The trial court's modification order simply replaced direct federal garnishment of James' retirement benefits with a state order to pay. The trial judge even ordered that increases in James' retirement pay be passed on to Dorothy without any apparent recognition that James no longer has any retirement pay. The court was clearly trying to regain the status quo as if the *Mansell* decision did not exist. The effect of the order was to divide retirement benefits that have been waived to receive disability benefits in direct contravention of the holding in *Mansell.* This simply cannot be done under the Supremacy Clause of the federal constitution.

We therefore VACATE the order and REMAND the case to the superior court for further proceedings consistent with this opinion.