# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | |
|---|---|
| GLORIA F. STANLEY GILLILAND, | ) |
| | ) |
| Plaintiff/Appellee, | ) Tipton General Sessions No. 3258 |
| | ) |
| VS. | ) Appeal No. 02A01-9603-GS-00056 |
| | ) |
| GARY DON STANLEY, | ) |
| | ) |
| Defendant/Appellant. | ) |

APPEAL FROM THE GENERAL SESSIONS COURT OF TIPTON COUNTY
AT COVINGTON, TENNESSEE
THE HONORABLE WILLIAM A. PEELER, JUDGE

**FILED**

April 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

**JEFFERY L. STIMPSON**
Munford, Tennessee
Attorney for Appellant

**JOHN R. BRANSON**
**BRANSON & BEARMAN**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

ALAN E. HIGHERS, J.

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendant Gary Don Stanley (the Husband) appeals the trial court's order enforcing the provisions of a final divorce decree previously entered by the court in July 1989. In enforcing the decree, the trial court ordered the Husband to make payments to Plaintiff Gloria F. Stanley Gilliland (the Wife) for her share of the proceeds from the sale of the parties' real property in Douglassville, Texas. The Wife cross-appeals, contending that the trial court erred in refusing to increase the Wife's interest in the Husband's military retirement benefits. For the reasons hereinafter stated, we affirm the trial court's judgment.

As pertinent, the final divorce decree provided that the Wife "shall remain an equal tenant in common in [the parties'] real property located in Douglassville, Texas." In the event the property was sold, the final decree entitled the Wife to "one-fourth (1/4) of the net proceeds" from such sale. The final decree also ordered the Husband "to pay by allotment to [the Wife] THIRTY FIVE PERCENT (35%) of his retirement benefits from the military when the same vests as long as [the Husband receives] the same."

After the parties' divorce became final, the Husband took two actions which affected the equitable distribution scheme of the final divorce decree. First, the Husband signed a power of attorney which authorized his parents, who owned a one-half interest in the Texas property, to sell, lease, or otherwise dispose of the property. After obtaining the power of attorney, the Husband's parents proceeded to enter into a Lease with Option to Purchase contract with a third party. Under the terms of the lease, the lessees were required to pay $700 for the option, plus a monthly rental of $200. If the lessees elected to purchase the property for a total price of $22,500, all monthly rents previously paid would be applied toward the purchase price.

The second action taken by the Husband affected the Wife's interest in the Husband's military retirement benefits. When the Husband retired in 1990, the Wife began receiving her share of the retirement benefits in accordance with the final divorce decree. Subsequently, however, the Husband caused his military retirement benefits to be decreased when he elected to waive a portion of the retirement pay so that he instead

2

could receive Veteran's Administration disability payments. While this election may have provided the Husband with certain tax benefits,[1] the decrease in the Husband's military retirement benefits resulted in a corresponding reduction in the amount of retirement benefits being paid to the Wife as her division of marital property.

When the Wife discovered the Husband's actions, she filed a petition for writ of scire facias and complaint for damages in the trial court, seeking to enforce the provisions of the final divorce decree. After conducting an evidentiary hearing, the trial court found the Lease with Option to Purchase contract to be a de facto sales contract which effected a "sale of the property and/or totally frustrat[ed] the intention of the [prior] orders of the court." Accordingly, the trial court awarded the Wife a judgment for her one-fourth interest in the proceeds from the sale of the Texas property, in the total amount of $775, which included one-fourth of the original option price plus $50 per month since the date of the contract. The trial court also ordered the Husband to begin paying to the Wife the sum of $50 per month "as and for her share of the proceeds on said property" for so long as the contract remained in effect. As for the reduction in the Husband's military retirement benefits, the trial court denied the relief sought by the Wife, finding the action taken by the Husband "to be within the rights of [the Husband], as set [forth] in 10 U.S.C. Section 1408, and 38 U.S.C. Section 3105, as interpreted by the U.S. Supreme Court in its decision [in] Mansell v. Mansell, [490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989)]."

On appeal, the Husband contends that the trial court erred in awarding the Wife a judgment for her interest in the Texas property because the court did not have jurisdiction or authority to affect title to foreign property or to construe any conveyance of such land. On cross-appeal, the Wife contends that the trial court erred in ruling that it lacked the

---

[1] In Mansell v. Mansell, 490 U.S. 581 (1989), the United States Supreme Court explained why a military retiree might make such an election:

> In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. [38 U.S.C. § 3105 (1982 ed. & Supp. V)]. Because disability benefits are exempt from federal, state, and local taxation, [38 U.S.C. § 3101(a) (1982 ed. & Supp. V)], military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.

Mansell, 490 U.S. at 583-84 (footnote omitted).

authority to increase the percentage of the Wife's interest in the Husband's military retirement benefits after the Husband converted a portion of the retirement benefits to disability payments.

## I. The Douglassville, Texas, Property

Contrary to the Husband's contention on appeal, the trial court did not lack jurisdiction to enter a judgment affecting title to the parties' real property in Texas. It is true that "a court of one state is without jurisdiction to pass title to lands lying wholly in another state" and, thus, that "[t]he local court cannot by its decree bind [such] land." Cory v. Olmstead, 290 S.W. 31, 32 (Tenn. 1926). The law is equally well-established, however, that, "in a proper case, with the necessary parties before the court, a decree in personam may be properly passed requiring a party defendant holding the legal title in trust, or otherwise, to transfer such title in accordance with the decree of the court." Id. As the Supreme Court of Tennessee has explained:

> In such case, although the court cannot bind the land itself by the decree, it can bind the conscience of the party in regard to the land, and enforce him, by process against his person, to perform his agreement. But the decree is merely in personam, and not in rem. Still, the want of power to act upon the land, or to enforce the decree in rem, is no objection to the jurisdiction to act upon the person, . . . .

Id. (quoting Johnson v. Kimbro, 40 Tenn. (3 Head) 557, 559 (1859)); accord Boals v. Boals, 519 S.W.2d 594, 597 (Tenn. App. 1973).

In the present case, the trial court's order did not attempt to pass title to the parties' real property in Texas. Instead, the court's order simply enforced against the Husband the provisions of the final divorce decree which entitled the Wife, in the event of a sale of the real property, to one-fourth of the proceeds. Significantly, the Husband has not contended that the trial court lacked personal jurisdiction over him, or that the court lacked subject matter jurisdiction over the proceedings to enforce the final divorce decree. We conclude,

4

therefore, that the trial court had jurisdiction to enter an order binding the Husband to pay to the Wife a portion of the proceeds from the de facto sale of the property.[2]

## II. The Husband's Military Retirement Benefits

We also affirm the trial court's refusal to increase the Wife's interest in the Husband's military retirement benefits. In Mansell v. Mansell, 490 U.S. 581, 594-95 (1989), the United States Supreme Court held that, under the Former Spouses' Protection Act,[3] state courts do not have "the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." In so holding, the Court explained:

> Section 1408(c)(1) of the [Former Spouses' Protection] Act affirmatively grants state courts the power to divide military retirement pay, yet its language is both precise and limited. It provides that "a court may treat disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." [10 U.S.C. § 1408(c)(1) (1982 ed. & Supp. V)]. The Act's definitional section specifically defines the term "disposable retired or retainer pay" to exclude, inter alia, military retirement pay waived in order to receive veterans' disability payments. [10 U.S.C. § 1408(a)(4)(B) (1982 ed. & Supp. V)]. Thus, under the Act's plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not

---

[2]On appeal, the Husband has not challenged the trial court's ruling that the Lease with Option to Purchase contract was a de facto sales contract. (Husband's brief, pp. 1-14). The only possible basis for reversal, therefore, is the Husband's jurisdiction argument, which we have concluded is without merit. (Husband's brief, pp. 7-13). In any event, although the Lease with Option to Purchase contract did not include the Wife's name or signature, it appears that the contract executed by the Wife's cotenants, which purported to convey an undivided interest in the property, eventually could result in the lessees obtaining good title, provided the lessees' possession continues for the required statutory period. See Hines v. Pointer, 523 S.W.2d 733, 740 (Tex. Civ. App. 1975); Jones v. Siler, 100 S.W.2d 352, 353 (Tex. Comm'n App. 1937).

[3]See 10 U.S.C.A. § 1408 (West 1983 & Supp. 1996). Congress enacted the Former Spouses' Protection Act in direct response to McCarty v. McCarty, 453 U.S. 210 (1981), in which the United States Supreme Court held that "the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property." Mansell, 490 U.S. at 584. The Act

> authorizes state courts to treat "disposable retired or retainer pay" as community property. [10 U.S.C. § 1408(c)(1) (1982 ed. & Supp. V)]. "'Disposable retired or retainer pay'" is defined as "the total monthly retired or retainer pay to which a military member is entitled," minus certain deductions. [10 U.S.C. § 1408(a)(4) (1982 ed. & Supp. V)]. Among the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits. [10 U.S.C. § 1408(a)(4)(B) (1982 ed. & Supp. V)].

Mansell, 490 U.S. at 584-85. Subsequent to the Act's passage, Tennessee courts again began treating vested and nonvested military pension rights as marital property subject to equitable distribution. Kendrick v. Kendrick, 902 S.W.2d 918, 926 (Tenn. App. 1994).

been granted the authority to treat total retired pay as community property.

Mansell, 490 U.S. at 588-89 (footnote omitted).

In her dissent, Justice O'Connor, joined by Justice Blackmun, commented on the harsh results of the majority's ruling in Mansell:

> The harsh reality of this holding is that former spouses . . . can, without their consent, be denied a fair share of their ex-spouse's military retirement pay simply because he elects to increase his after-tax income by converting a portion of that pay into disability benefits.

Mansell, 490 U.S. at 595 (O'Connor, J., dissenting).

At the hearing below, the Wife in the present case urged the trial court to avoid the harsh effects of the Mansell ruling by increasing the Wife's interest in the Husband's military retirement benefits from thirty-five percent (35%) to forty-nine and one-half percent (49.5%). In support of this argument, the Wife cited the Former Spouses' Protection Act, which authorizes state courts to award to former spouses up to fifty percent (50%) of a military retiree's disposable retired pay. See 10 U.S.C.A. § 1408(e)(1) (West 1983 & Supp. 1996).

Notwithstanding the Act's authorization, we conclude that the trial court did not err in refusing to increase the percentage of the Wife's interest in the Husband's military retirement benefits. The Husband's military retirement benefits, which accumulated during the parties' marriage, constituted marital property available for equitable distribution, subject to the limitations imposed by the Former Spouses' Protection Act. Towner v. Towner, 858 S.W.2d 888, 891 (Tenn. 1993). Thus, the payments to the Wife in this case are, in effect, a distribution to her of a portion of the Husband's military retirement benefits. Id. Inasmuch as the payments represent the division of marital property, the payments are not subject to modification by the court. Id. at 892.[4]

---

[4]In this regard, we reject the Wife's characterization of the periodic payments as alimony subject to modification. See Towner, 858 S.W.2d at 891.

6

We recognize that this type of post-decretal action by military retirees has caused problems for courts and litigants across the nation in divorce cases where a percentage of military retirement benefits has been distributed as marital property. See, e.g., Clauson v. Clauson, 831 P.2d 1257 (Alaska 1992); Abernethy v. Abernethy, 670 So. 2d 1027 (Fla. Dist. Ct. App.), review granted, 680 So. 2d 421 (Fla. 1996); McHugh v. McHugh, 861 P.2d 113 (Idaho Ct. App. 1993); Torwich v. Torwich, 660 A.2d 1214 (N.J. Super. Ct. App. Div. 1995); Price v. Price, 480 S.E.2d 92 (S.C. Ct. App. 1996). A military retiree may be entitled to convert a portion of his retirement pay to disability pay, thereby reducing his tax liability. See Mansell, 490 U.S. at 583-84 (citing 38 U.S.C. §§ 3101(a), 3105 (1982 ed. & Supp. V)). By doing so, however, the military retiree unilaterally alters the equitable distribution scheme fashioned by the trial court and, in some cases, by the parties themselves. See Mansell, 490 U.S. at 595 (O'Connor, J., dissenting); see also Clauson, 831 P.2d at 1261 (concluding that husband unilaterally and extrajudicially modified divorce decree when he decided to waive his retirement pension in order to collect disability benefits); Price, 480 S.E.2d at 94 (holding that husband breached his obligations under property settlement agreement by waiving portion of military retirement pay in order to receive increased disability pay and thereby unilaterally reducing wife's equitable apportionment of benefits acquired during marriage).

Despite the Supreme Court's ruling in Mansell, where the military retirement benefits were distributed pursuant to the terms of a property settlement agreement, some state courts have enforced the agreement against the military retiree, usually on the ground that the retiree should not be permitted to unilaterally modify the terms of the agreement. See Clauson, 831 P.2d at 1261; Abernethy, 670 So. 2d at 1029-31; McHugh, 861 P.2d at 115; Price, 480 S.E.2d at 94.[5] Courts also have held, even in the absence of a property settlement agreement, that such post-decretal action by the military retiree may entitle the former spouse to relief from the divorce decree. See Torwich, 660 A.2d at 1216 (holding that husband's action in obtaining disability payments in lieu of military retirement pay

---

[5]We also note that, on remand from Mansell v. Mansell, 490 U.S. 581 (1989), the California appellate court enforced the parties' property settlement agreement under which the husband agreed to the distribution of both military retirement benefits and disability benefits. See In re Marriage of Mansell, 265 Cal. Rptr. 227 (Cal. Ct. App. 1989), cert. denied, 498 U.S. 806 (1990).

constituted "exceptional and compelling" circumstance entitling wife to relief from judgment of divorce); see also Clauson, 831 P.2d at 1261 (holding that husband's action in waiving his retirement pension in order to collect disability benefits constituted sufficiently extraordinary circumstance to support relief from judgment under catch-all provision of Civil Rule 60(b)(6)).

In Tennessee, however, the law is clear: unlike alimony, the division of marital property is not subject to subsequent modification by the courts. Towner v. Towner, 858 S.W.2d 888, 892 (Tenn. 1993); Jones v. Jones, 784 S.W.2d 349, 351 (Tenn. App. 1989).[6] Moreover, Tennessee law does not appear to afford relief from judgment under the circumstances of this case. See, e.g., Duncan v. Duncan, 789 S.W.2d 557, 564 (Tenn. App. 1990) (denying wife's motion for relief from judgment under "catch-all" provision of T.R.C.P. 60.02(5) where, based on testimony of husband's accountants, trial court valued husband's business at $400,000 but, pending appeal of final divorce decree, husband sold business for $2.5 million); but see Clauson v. Clauson, 831 P.2d 1257, 1261 (Alaska 1992) (holding that husband's action in waiving his retirement pension in order to collect disability benefits constituted sufficiently extraordinary circumstance to support relief from judgment under catch-all provision of Civil Rule 60(b)(6)). Accordingly, we are constrained to conclude that the trial court in this case correctly declined to modify the property provisions of the final divorce decree relative to the Wife's interest in the Husband's military retirement benefits.

The trial court's judgment is hereby affirmed. Costs on appeal are adjudged equally against the parties, for which execution may issue if necessary.

---

[6]Compare McHugh v. McHugh, 861 P.2d 113 (Idaho Ct. App. 1993), in which the court granted the relief requested in this case by increasing the percentage of the husband's military retirement benefits to which the wife was entitled. In order to ensure that the wife continued to receive the same monthly amount, even after the husband reduced his retirement benefits by accepting increased disability payments, the court increased the wife's percentage interest from 18% to 40.37%. Id. at 115. We conclude that McHugh is distinguishable from the present case because, in McHugh, the court specifically retained jurisdiction for the limited purpose of modifying its order, if necessary, to carry out the intent of the parties' settlement agreement that the wife receive a set monthly amount of the husband's military retirement benefits. Id.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.