**Neil K. CLINE, Appellant,**

v.

**Debra S. CLINE, Appellee.**

No. S–10821.

Supreme Court of Alaska.

April 30, 2004.

Neil K. Cline, pro se, Anchorage.

Dorothea G. Aguero, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Federal law provides that a state court has the power to divide a military pension in a divorce case, but caps the amount that can be distributed to the non-military spouse at fifty percent. Because the superior court awarded sixty-two percent of the military spouse's pension to the non-military spouse, and because the court did not adjust the award when the military spouse received disability benefits in place of retirement benefits, we reverse the superior court's decision

## II. FACTS AND PROCEEDINGS

Neil Cline and Debra Lopez (formerly Debra Cline) were married in January 1984 in Peru, Indiana. They have three children, born in 1984, 1986, and 1987. The couple separated in April 1991 and their divorce trial was held before Superior Court Judge Peter A. Michalski in June 1992. A decree of divorce was entered shortly after trial. Neil was granted sole custody of the children, but Debra was given liberal visitation provided that she continued to live in Anchorage. Debra was ordered to pay child support pursuant to Alaska Civil Rule 90.3.

At the time of the divorce trial, Neil was preparing to retire from the military. As part of the property division, the court distributed Neil's military retirement, the exact amount of which had not yet been determined. The court made the following finding:

> The court finds that it is proper to use the date of trial of June 1992 for the date

of distribution for the military retirement earned by Mr. Cline during the marriage. The court finds that approximately eighteen (18%) of the retirement was earned during the marriage. The court hereby orders that Five Hundred Dollars ($500.00) a month is awarded to Ms. Cline as her share of the retirement. The court further finds that it would be fair and equitable to leave the issue of military retirement available to be reopened for future calculation if it is so warranted.

On August 27, 1992, after the findings of fact were submitted to the court, but before they were signed, Neil filed a motion for reconsideration. In his motion, Neil explained that since the conclusion of the trial, he had begun to receive his military retirement in the amount of $799.09 per month. Because $500 greatly exceeded eighteen percent of his retirement, Neil asked the court to adjust the award to $143.83 per month. Without discussion, the court denied Neil's motion for reconsideration of the order dividing his retirement on September 29, 1992. Neil did not appeal the court's denial.

On May 29, 2002—nearly ten years later—Debra filed a motion seeking payment for past due retirement benefits awarded to her in the 1992 property division. In the memorandum accompanying her motion, Debra maintained that she had never received any portion of Neil's retirement despite having asked him to begin paying her. She requested a lump sum payment of $60,000, the amount she should have received between June 1992 and June 2002, plus $6,300, representing prejudgment interest calculated at a rate of ten and one-half percent, for a total award of $66,300. Debra also asked for attorney's fees and postjudgment interest calculated at a rate of four and one-quarter percent.

Neil objected to Debra's motion and concurrently filed a motion to amend the original judgment, asking the court to reopen the issue of military retirement as provided for in its 1992 order, since the $500 award actually amounted to approximately sixty-two percent of his $800 monthly military retirement. Neil maintained that he had thought it was incumbent upon Debra to contact the

military to arrange for them to pay her directly. He claimed that he did not believe it had been his responsibility to pay her and therefore he had never done so. Invoking Alaska Civil Rule 60(b)(6), which gives courts discretionary authority to relieve a party from a final judgment, Neil asked the court to retroactively modify the divorce decree to align his payments to Debra more closely to the eighteen percent figure.

Debra contested Neil's characterization of the facts, claiming that she had asked him to begin paying her approximately five years earlier and had explained to him that her attempts to arrange to be paid directly by the military were unsuccessful. She maintained that Neil had refused to pay her even part of the award, based on his belief that the amount had been calculated incorrectly. Debra claimed that until she consulted with her present attorney, she was unaware that she could obtain a judgment from the court to collect the past due payments. Each party argued that the other's motions should be barred by laches or estoppel.

Judge Michalski ruled on both parties' motions on July 30, 2002. He first noted that "Mr. Cline has not previously sought a timely correction of what facially sounds like an error when he claims his monthly retirement never exceeds $800 per month." Accordingly, the court denied any retroactive relief. Based on Neil's 2001 tax return, which had been filed in connection with the parties' arguments regarding child support, Judge Michalski then determined Neil's retirement to be $18,815.40, and calculated eighteen percent of that amount to be $245.78 per month. Because the court had retained jurisdiction over the case to address modification of the distribution of military retirement, the court prospectively amended the award to $245.78 per month from the date the motion was filed.

Neil filed a motion for reconsideration, citing his August 27, 1992 motion for reconsideration in response to Judge Michalski's statement that he had not previously sought a timely correction of the divorce decree. Neil asked the court to amend the original decree to reflect an award of eighteen percent of Neil's military retirement, without

attaching a specific dollar amount. Neil then stated that he was about to begin receiving disability payments from the military, which would reduce his retirement by $199 per month. Given this reduction, Neil asked the court to adjust the prospective amount owed to Debra to $209.96 per month. The superior court denied Neil's motion for reconsideration without explanation.

The court entered final judgment in September 2002. The court required Neil to pay Debra the amount past due and amended the divorce decree from that point forward. Specifically, the court's order stated:

> Defendant having moved this court to amend the Decree of Divorce regarding the amount of retirement to be paid to Debra Lopez, formerly Cline, as her marital share, and this court having considered the opposition, and being fully advised in the premises, finds that there is cause to reduce the previously ordered amount of $500 per month to $245.78, which represents the marital share due to Debra Lopez. However, this reduction shall have prospective effect only from the date Mr. Cline filed his Motion to Amend Decree. Therefore, Mr. Cline shall pay $245.78, effective June 18, 2002, and payable on July 1, 2002 and the first day of each month thereafter.

According to the court's calculations, Neil owed Debra $93,221.39, consisting of $60,491.56 in principal, $32,254.82 in prejudgment interest, and $475.01 in attorney's fees.

Neil appeals. While he has been represented by counsel in all prior proceedings, he is representing himself *pro se* on this appeal.

## III. STANDARD OF REVIEW

■ "We will not overturn a trial court's decision to modify a decree adjudicating property rights except upon a showing that the court has abused its discretion."[1] We will find an abuse of discretion only when we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[2]

■ Similarly, we will not reverse a trial court's decision on a motion for reconsideration absent an abuse of discretion.[3]

■ Because prejudgment interest is awarded under Alaska law largely as a matter of course rather than as a matter of discretion left to the trial court,[4] we review the trial court's application of the prejudgment interest statute *de novo*.[5]

## IV. DISCUSSION

Neil argues that, because the superior court admitted that the amount awarded to Debra in the court's initial order was erroneous, his Civil Rule 60(b) motion to retroactively correct the error in the court's original calculation should have been granted. In addition to challenging the court's failure to correct its calculation error, Neil argues that the superior court's order violated the Uniformed Services Former Spouses' Protection Act (USFSPA), a federal law that authorizes state courts to include federal military retirement pay in dividing of marital property.[6] Debra responds that the court acted within its discretion in refusing to retroactively amend the original order pursuant to Civil Rule 60(b). Debra does not address Neil's claim that he is entitled to relief based on the conflict between the court's decision and fed-

1. *Clauson v. Clauson*, 831 P.2d 1257, 1260 n. 4 (Alaska 1992) (citing *Schofield v. Schofield*, 777 P.2d 197, 202 (Alaska 1989)).

2. *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982).

3. *Neal & Co., Inc. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995).

4. *Hofmann v. von Wirth*, 907 P.2d 454, 455 (Alaska 1995).

5. *City of Seward v. Afognak Logging*, 31 P.3d 780, 783 (Alaska 2001). *See also John's Heating Service v. Lamb*, 46 P.3d 1024, 1041 (Alaska 2002) (reviewing application of prejudgment interest rules *de novo* ).

6. 10 U.S.C. § 1408 (West 2003). This law provides that no more than fifty percent of a military spouse's retirement may be awarded to the other spouse. At the time the original award was made in 1992, if Neil's retirement benefit was $799.09, Debra's share would have amounted to sixty-two and one-half percent of his retirement.

eral law. For the reasons that follow, we conclude that Civil Rule 60(b)(4) applies to attempts to retroactively modify past arrearages where the underlying judgment is void or partially void as a matter of law, and that a property division order that directs more than fifty percent of a spouse's military retirement to the other spouse conflicts with federal law and is, to that extent, void.

### A. Civil Rule 60(b)(4) Provides a Basis for Relief if a Judgment is Void as a Matter of Law.

The parties focus their arguments concerning the availability of relief from judgment on differing provisions of Civil Rule 60(b). While the first five sections of that rule provide relief in specific circumstances, Neil relies on subsection (6), the final, "catch-all" provision of the rule that allows for relief for "any other reason justifying relief from operation of the judgment." He points to the superior court's recognition that the original order was erroneous and argues that its failure to correct the mistake is a sufficient reason justifying relief from the judgment. Debra responds that subsection (6) may only be used when subsections (1) through (5) do not apply, and argues that Neil's claim for relief should have been brought under subsection (1) because he earlier characterized the court's action as a "mathematical error."[7] Because relief under subsection (1) must be sought within one year of the original order, Debra argues that Neil's motion is untimely.

There is no question that Civil Rule 60(b) governs motions to modify an order or judgment for property division.[8] This rule provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

> The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c). A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant not personally served, or to set aside a judgment for fraud upon the court.

 Neil argues that the court's initial property division violated the USFSPA, which provides that no more than fifty percent of a recipient's military retirement may legally be awarded to a former spouse under state law.[9] As we have noted previously, the USFSPA was enacted to provide state courts with the option to " 'consider military retirement pay in effecting an equitable and just property division.' "[10] Relevant to this case are sections (c) and (e) of the USFSPA. Section (c) provides state courts with the

---

**7.** Civil Rule 60(b)(1) provides for relief from judgments based on "mistake, inadvertence, surprise or excusable neglect," if brought within one year of the original judgment or order.

**8.** *Morris v. Morris,* 908 P.2d 425, 427 (Alaska 1995) (quoting *Allen v. Allen,* 645 P.2d 774, 776 (Alaska 1982)).

**9.** 10 U.S.C. § 1408(e)(1) (West 2003).

**10.** *Clauson v. Clauson,* 831 P.2d 1257, 1261 (Alaska 1992) (quoting *Chase v. Chase,* 662 P.2d 944, 946 (Alaska 1983)).

authority to treat retired pay as marital property:

> (1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

Subsection (e)(1) states that "[t]he total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay." The plain language of this statute authorizes state courts to award no more than fifty percent of a recipient's military retirement in a property division.[11] We next consider whether a state trial court exceeds its jurisdiction when it awards more than fifty percent of a spouse's military retirement in a property division. For the reasons that follow, we hold that it does.

We considered a related issue in *Clauson v. Clauson*,[12] in which an ex-wife sought modification of a property division agreement based on her ex-husband's election to receive disability benefits in lieu of military retirement pay.[13] (Indeed, the issue of how to treat disability benefits received in lieu of military retirement pay is also present in this case. *See discussion infra* Part IV.B.) In considering the effect of the USFSPA on the ability of state courts to divide military retirement benefits, we explained:

There are actually two related but separate questions that must be answered in order to resolve this appeal. The first is whether state courts have any power, after *Mansell*,[14] to equitably divide veterans' disability benefits received in place of waived retirement pay. The answer to that is an unequivocal no.... Accordingly, we hold that the USFSPA prohibits our courts from distributing this type of military benefit to a former spouse when allocating property upon divorce.[15]

While we did not explicitly consider the issue of a state court's jurisdiction to divide disability benefits in *Clauson*, we did express the opinion that state courts had been preempted by federal law from dividing such payments in the context of a property division.[16] Our decision in *Clauson* was based on our reading of the federal law as stripping state courts of subject matter jurisdiction over those benefits—disability benefits received in lieu of retirement benefits—specified in the USFSPA. By the same logic, we now hold that the USFSPA bars state courts from exercising subject matter jurisdiction over more than fifty percent of a recipient's military retirement benefits.

In the past, we have looked to the Restatement (Second) of Judgments for guidance in situations such as this.[17] Section 11 of the Restatement provides that "[a] judgment may properly be rendered against a party only if the court has authority to adjudicate the *type of controversy* involved in the action."[18] But we observed that "this definition is not especially helpful, for much depends on how the term 'type of controversy'

---

11. As explained by the House of Representatives in amending subsection (e)(1):

 The USFSPA authorizes state courts to treat "disposable retired or retainer pay" as property and defines such pay to exclude military retired pay waived in order for the retiree to receive veterans' disability and civil service benefits....
 The law would be clarified to ensure that regardless of the number of former spouses, the aggregate amount of retired pay that would be payable to them would not exceed 50 percent of the service member's disposable retired pay.

 H. REP. No. 101–665, at 279–81 (1990), reprinted in 1990 U.S.C.C.A.N. 2931, 3005–06.

12. 831 P.2d 1257 (Alaska 1992).

13. *Id.* at 1259.

14. *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

15. *Clauson*, 831 P.2d at 1262.

16. *Id.*

17. *See, e.g., Perry v. Newkirk*, 871 P.2d 1150 (Alaska 1994).

18. RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982) (emphasis added).

is defined."[19] We reasoned that whether a controversy is of the type a court may resolve cannot be identified by terminology alone, but rather should be determined by reference to whether the matter can more plausibly be characterized as one of subject matter jurisdiction or of merits or procedure.[20] Section 12 of the Restatement discusses the application of *res judicata* if a judgment is later challenged for lack of subject matter jurisdiction, explaining that:

When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.[21]

When the issue of subject matter jurisdiction has only been implicitly resolved by virtue of a judgment on the merits and is later raised in the context of an attack on that judgment, the Restatement explains that the interests primarily at stake are not those of the parties, which earlier had the opportunity to litigate the issue of jurisdiction (whether they chose to or not), but of the government and society.[22] This prompts the question of

whether the public interest in observance of the particular jurisdictional rule is sufficiently strong to permit a possibly superfluous vindication of the rule by a litigant who is undeserving of the accompanying benefit that will redound to him. The public interest is of that strength only if the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection.[23]

In the present case, the subject matter of state courts is clearly confined to the distribution of fifty percent or less of a recipient's military retirement.[24] In the words of the Restatement, the superior court's action in distributing more than fifty percent of the military retirement "was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority."[25] Furthermore, while the interests of the parties themselves may be minimal given the failure to appeal the court's initial decision (by Neil) or to seek relief for nearly ten years (by Debra), the public interest in remedying this wrong is great. Prior to the passage of the USFSPA, state courts had no authority to divide military retirement benefits at all.[26] The USFSPA established a limited grant of subject matter jurisdiction to state courts.[27] The supremacy clause of the federal constitution requires that state courts defer to federal law.[28] Because allow-

19. *Perry*, 871 P.2d at 1154.

20. *Id.*

21. RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982).

22. *Id.* at cmt d.

23. *Id.*

24. *See* 10 U.S.C. §§ 1408(c), (e) (West 2003).

25. RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982). *See also Clauson v. Clauson*, 831 P.2d 1257, 1262 (Alaska 1992) ("the USFSPA prohibits our courts from distributing [disability benefits] to a former spouse when allocating property upon divorce"); *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739,

745 (1999) ("[b]ased on the preemptive effect of the USFSPA, we conclude that federal law precludes a state court, in a dissolution proceeding, from exercising subject matter jurisdiction over VA disability benefits").

26. *McCarty v. McCarty*, 453 U.S. 210, 236, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

27. *Clauson*, 831 P.2d at 1261 n. 6.

28. Article VI, § 1, cl. 2 of the U.S. Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall

ing the superior court's decision to stand would violate the supremacy clause of the federal constitution, we must require the property division to be retroactively modified to the extent that the division exceeds the fifty percent federal limit on state jurisdiction.

However, to the extent that the superior court's original property division did not exceed the federal limit, that part of its order did not amount to a jurisdictional error. While the court's expressed intent to award Debra only eighteen percent of Neil's military retirement makes it clear that it was error to allow Debra to receive more than eighteen percent, Neil's remedy for challenging the non-jurisdictional part of the erroneous order was to file a timely appeal. Because he failed to do so, we remand with instructions for the superior court to modify the award of retirement benefits to fifty percent of the amount Neil received. Retroactive modification of the award to eighteen percent of his retirement benefit would allow Neil to subvert the rule that Civil Rule 60(b) may not be used as a substitute for a timely appeal.[29]

### B. Disability Benefits Received in Place of Waived Retirement Pay Are Not Subject to Equitable Division.

Neil next asserts that the court abused its discretion in denying his motion for reconsideration requesting that the court adjust the amount due to Debra by deducting his disability pay from his income. Following the court's July 30, 2002 decision in which the court prospectively amended the payment due to Debra based on Neil's 2001 tax return, Neil filed a motion for reconsideration under Alaska Civil Rule 77(k)(ii) and (iii) in which he stated:

A further problem has just developed in that the Defendant has just received notice that he is being awarded disability of $199.00 per month which will be subtracted

be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

from his monthly retirement checks thereby reducing the Plaintiff's claim of 18% of $16385.00 to 18% of $13997.00 or $209.96 per month. A copy of the official notice of this change is attached to Neil Cline's affidavit.

Attached to the motion was a copy of a letter from the Department of Veterans Affairs, which appears to have been dated July 5, 2002, explaining that the department had determined that Neil would be entitled to military disability payments in the amount of $199.00 per month. While the benefit was effective April 1, 2002, Neil did not receive the first disability payment until July 1, 2002 in order to avoid the possibility of double recovery. In his reply brief, Neil maintains that, because the court did not consider all of the facts and information available to it at the time it entered its September 2002 order, and because it did not take into account the relevant information provided in Neil's August 2002 motion for reconsideration, its decision should be reversed.

Debra counters that the superior court did not abuse its discretion in failing to consider that Neil's retirement would be reduced by $199 in disability payments, since the issue was not raised until Neil filed his motion for reconsideration, and therefore was not properly before the court when the calculations were made. Because the issue was not properly raised before the trial court, Debra argues that it cannot be reached in the context of either a motion for reconsideration or an appeal.

Civil Rule 77(k) provides:

(1) A party may move the court to reconsider a ruling previously decided if, in reaching its decision:

(i) The court has overlooked, misapplied or failed to consider a statute, decision or principle directly controlling; or

(ii) The court has overlooked or misconceived some material fact or proposition of law; or

**29.** *Burrell v. Burrell,* 696 P.2d 157, 163 (Alaska 1984).

(iii) The court has overlooked or misconceived a material question in the case; or

(iv) The law applied in the ruling has been subsequently changed by court decision or statute.

Neil filed his motion pursuant to subsections (ii) and (iii), arguing that the court had not considered the fact that Neil had begun to receive disability pay from the military and that such pay could not be divided in the context of a property distribution under federal law. In *Mansell v. Mansell*,[30] the U.S. Supreme Court unequivocally held that "the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."[31] We recognized that holding in *Clauson*, stating that the answer to the question whether "state courts have any power, after *Mansell*, to equitably divide veterans' disability benefits received in place of waived retirement pay . . . is an unequivocal no."[32]

Without responding to the substance of Neil's argument, Debra maintains that, because the issue of Neil's disability pay was not raised in his motion to amend the original judgment, it could not be raised in the context of a motion for reconsideration. She relies on *Miller v. Miller*[33] for this proposition. In *Miller*, a father seeking an offset to his child support obligation based on his daughter's receipt of social security benefits derived from his eligibility for them, argued in a motion for reconsideration that he should not have been required to pay child support in the first place since he was not the child's biological father.[34] We rejected that argument because he had not disputed his paternity in the divorce proceedings and sought to raise the issue for the first time in a motion for reconsideration.[35] Furthermore, since the motion for reconsideration had not been timely filed, and no good cause for lateness was shown, we held that the issue had not been properly raised at trial and therefore would not be considered on appeal.[36]

While we have held that "a motion for reconsideration [may not] be used as a means to seek an extension of time for the presentation of additional evidence on the merits of a claim,"[37] we were referring to information which had been available to the parties prior to the filing of the motions underlying the order for which reconsideration was sought.[38] The information in question here did not become available to Neil until after those motions had been filed. As we have explained, the purpose of Rule 77(k) is "to remedy mistakes in judicial decision-making where grounds exist while recognizing the need for a fair and efficient administration of justice."[39] In this case, resolution of the issue whether veterans' disability payments could be divided would both further the fair and efficient administration of justice and would permit the court to remedy an error in its original decision. Because these criteria have been met and because some adjustment to the parties' property distribution must be made in order to avoid conflict with the USFSPA, and thus with the supremacy clause, we conclude that the superior court abused its discretion in failing to consider the information provided by Neil in his motion for reconsideration.

### C. Calculation of Award for Payments Past Due

Neil also contests the award of prejudgment interest, arguing that "[i]nterest should

**30.** 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

**31.** *Id.* at 594–95, 109 S.Ct. 2023.

**32.** 831 P.2d at 1262.

**33.** 890 P.2d 574 (Alaska 1995).

**34.** *Id.* at 576 n. 2.

**35.** *Id.*

**36.** *Id.*

**37.** *Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 663 (Alaska 2001); *Neal & Co., Inc. v. Ass'n of Vill. Council Presidents Reg'l Housing Auth.*, 895 P.2d 497, 506 (Alaska 1995).

**38.** *See id.*

**39.** *Id.*

only accrue from the date of judgment, not prior years." The superior court ordered Neil to pay prejudgment interest based on its judgment of payments past due from June 12, 1992 to August 19, 2002. While the award of interest was justified, the superior court mischaracterized the collection action as a judgment rather than a writ of execution of an existing judgment.

The superior court entered an order on June 12, 1992 ordering Neil to pay Debra $500 per month as her share of the military retirement benefits earned by Neil during marriage. In *State, Department of Revenue, Child Support Enforcement Division ex rel. Inman v. Dean,*[40] we held that efforts to collect past due alimony payments ordered by decree, like actions to collect past due child support, involve periodic support obligations that are "judgments that vest when an installment becomes due but remains unpaid."[41] This reasoning is equally applicable to past-due installment payments of marital property. Accordingly, each monthly payment owed to Debra pursuant to the 1992 court order was a judgment that vested when it became due and payable. Postjudgment interest accrues on these sums at the statutory rate as prescribed by AS 09.30.070(a),[42] and different interest rates will apply to judgments vesting in different years. On remand, the trial court should determine the interest rate in effect during each year encompassed in the court's modified judgment, and then recalculate the amount of postjudgment interest owed based on the date of accrual of each enforceable obligation and the interest rate in effect at that time during the year it accrued.

## IV. CONCLUSION

Because the superior court's decision conflicts with the USFSPA, we hold that the court abused its discretion in denying Neil's motions for relief under Civil Rule 60(b)(6) and for reconsideration of its amended order. Because different interest rates will apply to

judgements vesting at different times, the court must recalculate prejudgment interest. Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.

---

**40.** 902 P.2d 1321 (Alaska 1995).

**41.** *Id.* at 1323.

**42.** The statutory interest rate used to calculate pre- and postjudgment interest was changed in

1997. *See* ch. 26, §§ 18, 19, SLA 1997. Because this case involves judgments due from 1992 to 2002, both the current and former statutes will apply.