BROWN JUG, INC., Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN & HELPERS OF AMERI-
CA, LOCAL 959, and John Does and
Jane Does 1 Through 25, Appellees.

No. S–128.

Supreme Court of Alaska.

Aug. 24, 1984.

Terrance A. Turner, David M. Freeman, Betty L. Johnson, Owens & Turner, Anchorage, for appellant.

Stephan R. Porter, Teamsters Local 959, Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from a grant of summary judgment to Teamsters Local 959 in a trespass action brought by Brown Jug, Inc. Brown Jug charged that members of Local 959 trespassed on Brown Jug's property while engaged in consumer boycott picketing at its Wasilla outlet. Local 959's mo-

tion for summary judgment was based on claims that state court jurisdiction is preempted by the National Labor Relations Act, and that the union should not be held liable since Brown Jug suffered no compensable damage and was unable to identify the individuals who allegedly trespassed. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As part of its strike against Anchorage Cold Storage, Local 959 of the International Brotherhood of Teamsters established consumer boycott picketing in front of stores in the Anchorage and Palmer/Wasilla areas which carried products distributed by Anchorage Cold Storage. The pickets carried signs requesting that consumers not buy certain brands of soft drinks and alcohol. The strikers were instructed to picket peacefully, to remain on public sidewalks if store owners denied them permission to walk immediately in front of stores, and to refrain from interfering with employees of the stores or deliveries to them.

Among the stores selected by Local 959 for picketing was the Brown Jug store in Wasilla, located near the intersection of the Parks and the Palmer-Wasilla Highways. In February 1982, before the picketing began, Local 959's business agent sent a letter to Brown Jug, advising it that the Wasilla store would be picketed. Brown Jug's attorney contacted the business agent, and informed him that Brown Jug wanted picketers to limit their picketing to the Parks Highway and to refrain from parking in Brown Jug's parking lot. The business representative agreed that picketers would only picket on the one hundred foot public right-of-way adjacent to the highway, that no picketing would take place in the Brown Jug parking lot or on other private proper-ty, that picketers would not park their cars in the parking lot, and that customer and employee access to the store would not be restricted.

■ Brown Jug alleges (and for the purposes of this appeal we must assume)[1] that from the time the picketing began, Local 959 pickets parked their cars in the Brown Jug parking lot, obstructed customer access to the parking lot and store, and picketed on Brown Jug's property. Brown Jug's counsel wrote to Local 959 in March 1982 advising that picketers were trespassing on Brown Jug property and demanding that they stop. The picketing continued through August 1982.

Brown Jug filed suit against Local 959 and 25 Jane and John Does on March 30, 1982. In its initial complaint, it alleged trespass, blocking and obstructing access to the parking lot, and assault, disorderly conduct and harassment. It also claimed that Local 959's actions had led to a loss of business. In an amended complaint, Brown Jug eliminated the count for assault, disorderly conduct and harassment, added a count alleging negligent supervision and direction of picketers, and dropped the allegation that the store had lost business. It sought compensatory[2] and punitive damages and a permanent injunction.[3]

Brown Jug admits that it has suffered no loss of sales, business or good will as a result of the picketing. The value of its property has not decreased. In fact, sales of products distributed by Anchorage Cold Storage increased during the period the Wasilla store was picketed.

Local 959 moved for summary judgment in June 1983 claiming (1) that it could not be responsible for the acts of unidentified agents, (2) that it could not be held liable

---

1. The parties disagree on whether Local 959 picketers trespassed on Brown Jug's property and obstructed access to its parking lot. In reviewing the grant of a summary judgment motion, we must view all factual questions in the light most favorable to the party opposing the motion. *Bowers v. Alaska State Employees Federal Credit Union*, 670 P.2d 1145, 1147 (Alaska 1983).

2. Brown Jug has subsequently abandoned its claim for compensatory damages.

3. In its amended complaint, Brown Jug sought a preliminary as well as a permanent injunction. Brown Jug never moved below for a preliminary injunction, however.

for trespass since Brown Jug had suffered no damages, and (3) that federal labor law pre-empted state jurisdiction over the case. The trial court granted summary judgment to Local 959. Its order did not specify the basis for dismissing Brown Jug's complaint. Brown Jug's motion for reconsideration was denied, and this appeal followed.

## II. PRE–EMPTION OF STATE COURT JURISDICTION

■ Local 959's motion for summary judgment was based in part on a contention that the state court's jurisdiction over this action was pre-empted under the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.). Ordinarily, the NLRA pre-empts state court jurisdiction over activities that are protected or prohibited under the Act. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Local 959 argues that consumer boycott picketing is protected under the NLRA *(see NLRB v. Fruit and Vegetable Packers,* 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964)), and that the state court therefore had no jurisdiction over the activities of its picketers.

On appeal, Brown Jug argues that state court jurisdiction over this action is not pre-empted. It agrees that Local 959 is entitled to engage 'n consumer boycott picketing and asserts that it challenges only Local 959's right to trespass on its property and block access to its parking lot. Brown Jug contends that, under recent decisions of the United States Supreme Court, state courts clearly have jurisdiction over cases involving trespass and obstruction of access.

The leading case on pre-emption by the NLRA is *San Diego Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In that case, the Court set forth guidelines foreclosing state court jurisdiction over activities which were clearly protected or prohibited by the NLRA, and limiting the states' jurisdiction over activities which were arguably subject to it. The Court noted the strong national interest in maintaining a single forum for adjudicating collective bargaining problems and the importance of allowing the National Labor Relations Board exclusive jurisdiction over such problems, even in cases where it chooses not to exercise that jurisdiction. The *Garmon* court pointed out, however, that states might retain jurisdiction over cases "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act", and "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79, 3 L.Ed.2d at 782. Thus, the Court has held that states have jurisdiction to enforce laws concerning violence *(see Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957)), libel *(see Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966)), intentional infliction of emotional distress *(see Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51. L.Ed.2d 338 (1977)), and obstruction of access *(see Automobile Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958)).

■ In its 1978 decision in *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Court addressed the question of state court jurisdiction over trespass actions and significantly expanded the scope of state court jurisdiction over many labor-related activities. In *Sears,* a carpenters' union set up pickets to protest Sears' refusal to hire union carpenters or to agree to abide by the terms of the union's master labor agreement. When the union refused to remove the pickets from Sears' private walkway, Sears sought an injunction against the trespass. The Court noted that the union's activities were arguably prohibited under the NLRA as an attempt to force Sears into replacing its employees with union carpenters or to sign a prehire or members-only agreement with the union. The activities were also arguably protected

under the NLRA as an attempt to secure Sears' compliance with area standards. The Court nevertheless held that the NLRB's potential jurisdiction over the union's activities did not pre-empt state jurisdiction over Sears' trespass action. In so holding, the Court set forth different criteria to be considered in determining whether a state court's jurisdiction is pre-empted, depending on whether the activity in question is arguably prohibited or arguably protected under the NLRA.

■ For activities which are arguably prohibited under the NLRA, it is necessary to determine first, whether a significant state interest exists in protecting citizens from the challenged conduct, and second, whether the exercise of state jurisdiction entails "little risk of interference with the regulatory jurisdiction of the Labor Board." *Id.* at 196, 98 S.Ct. at 1757, 56 L.Ed.2d at 225. The critical inquiry is "whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board." *Id.* In *Sears*, the NLRB would have considered whether the picketing itself constituted an unfair labor practice while the state court had merely been asked to determine whether the *location* of the picketing violated state trespass laws. The Court concluded that the two issues were sufficiently different that the state's jurisdiction did not impinge on federal labor policy.

■ In determining that the arguably protected character of the union's activities did not prevent the state court from exercising jurisdiction over the trespass action, the Court adopted a different analysis. It noted first that "to the extent the Union's picketing was arguably protected, there existed a potential overlap between the controversy presented to the state court and that which the Union might have brought before the NLRB." *Id.* at 200–201, 98

S.Ct. at 1759–1760, 56 L.Ed.2d at 227 (footnote omitted). The Court concluded, however, that the NLRB should have primary jurisdiction "only in situations in which an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so." *Id.* at 201, 98 S.Ct. at 1759, 56 L.Ed.2d at 228. The NLRB could only have determined whether the union's activity was protected if the union had brought an unfair labor practice charge when Sears had attempted to stop it from picketing. When it failed to file such a charge, it left Sears with no option other than to appeal to the state courts, since it could not invoke NLRB jurisdiction on its own.[4] The Court concluded that:

> [T]he primary-jurisdiction rationale does not provide a *sufficient* justification for pre-empting state jurisdiction over arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so.

*Id.* at 202–3, 98 S.Ct. at 1761–2, 56 L.Ed.2d at 229 (footnote omitted). It left open the possibility that pre-emption might be appropriate where allowing the exercise of state jurisdiction created a significant risk of misinterpretation of federal law. However, it concluded that trespassory picketing is so rarely protected that state courts could safely be accorded jurisdiction over trespass cases unless a union acted to present its case to the NLRB. *Id.* at 205–207, 98 S.Ct. at 1761–1762, 56 L.Ed.2d at 230–232.

■ The Supreme Court's holding in *Sears* is determinative in the instant case. Since Brown Jug does not contend that the picketing itself was prohibited, and since the NLRA does not normally concern itself with the location of picketing,[5] Local 959's activities were not arguably prohibited un-

---

4. A union's trespass is not, in itself, an unfair labor practice under the NLRA. *See generally* § 8(b) of the Act, 29 U.S.C. § 158(b). Thus, the mere fact of a union trespass does not enable a property owner to invoke the Board's jurisdiction.

5. *See Sears,* 436 U.S. at 198, 98 S.Ct. at 1758, 56 L.Ed.2d at 226.

der the NLRA.[6] We therefore need not apply the "arguably prohibited" prong of *Sears*. The union's activity was arguably protected, however. The consumer boycott picket itself, as Brown Jug concedes, was protected under the NLRA. The trespassory nature of the picketing might arguably also be protected: the union might have argued that it could not effectively have exercised its rights to carry on consumer boycott picketing without trespassing on Brown Jug's property, and therefore that the trespass was protected. *See Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Seattle-First National Bank v. NLRB*, 651 F.2d 1272 (9th Cir. 1980).[7] Applying the *Sears* "arguably protected" analysis to the facts of this case, we must conclude that state court jurisdiction is not pre-empted. In this case, as in *Sears*, the union could have filed unfair labor practice charges with the National Labor Relations Board as soon as a demand to stop trespassing was made. Had it done so, the NLRB would have had the opportunity to rule on the issue, and state court jurisdiction would have been pre-empted.[8] Since Local 959 did not file charges with the NLRB, however, and since Brown Jug was unable to appeal to the NLRB on its own, Brown Jug's only option was to turn to the state courts.[9]

The issue which could have been presented to the NLRB, moreover, is identical to that which could have been submitted in *Sears:* whether trespassory picketing was protected under the NLRA. The *Sears* court concluded that trespassory picketing is so unlikely to be protected that, when a union does not invoke the jurisdiction of the NLRB, the issue may generally be submitted to state courts without significant risk that federal law will be misinterpreted. *Sears* at 205–07, 98 S.Ct. at 1761–62, 56 L.Ed.2d at 230–31. It therefore held that, under such circumstances, state court jurisdiction over trespass actions is not pre-empted. We conclude that where, as here, a union does not submit the question to the NLRB, Alaska courts have jurisdiction over trespass actions.

■ Local 959 claims that *Sears* is distinguishable from the instant case because Brown Jug, unlike Sears, never moved for a preliminary injunction. It contends that, had Brown Jug obtained an injunction, the union could have filed unfair labor practice charges before the NLRB. This argument is without merit. Local 959 could have filed unfair labor practice charges when Brown Jug demanded that it stop trespassing or when Brown Jug filed suit in this case. *Sears* at 207 n. 43, 98 S.Ct. at 1763 n. 43, 56 L.Ed.2d at 231 n. 43. Since it has not filed such charges, state jurisdiction is not pre-empted, whether or not Brown Jug chose to seek a preliminary injunction.[10]

### III.  ABSENCE OF COMPENSABLE DAMAGES

Local 959's second argument is that it cannot be liable for trespass, since Brown

---

**6.** Obstruction of consumer access to the Brown Jug store could be viewed as arguably prohibited under the NLRA insofar as it turned the union's activity into a secondary boycott. Local 959 does not argue that the court's jurisdiction was pre-empted on this basis, and we do not address the issue.

**7.** The Court concluded that the trespassory picketing at issue in *Sears* was arguably protected for similar reasons. *Sears* 436 U.S. at 204–5, 98 S.Ct. at 1761–2, 56 L.Ed.2d at 230.

We note that we are not asked to rule on the merits of this argument, but merely on whether its existence is sufficient to pre-empt state court jurisdiction. We express no opinion on the question · of whether the allegedly trespassory nature of the picketing was itself protected under the NLRA.

**8.** *See Shirley v. Retail Store Employee's Union,* 225 Kan. 470, 592 P.2d 433 (1979); *see also Sears,* 436 U.S. at 209, 98 S.Ct. at 1763, 56 L.Ed.2d at 232–33, Blackmun, J., concurring.

**9.** *See* note 4, *supra.*

**10.** Also without merit is Local 959's contention that, since Brown Jug has suffered no compensable damage, the state has no strong interest in asserting jurisdiction over this case. In *Sears,* the Court made it clear that, at least in cases where arguably prohibited conduct is not at issue, state jurisdiction over trespass actions would not be pre-empted unless unfair labor practice charges were filed with the NLRB.

Jug has admitted that it suffered no damages. It cites Restatement (Second) of Torts § 165 (1965), which states that:

> One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

It argues that, since Brown Jug has admitted that the trespass caused no harm to Brown Jug's land or business interests, the union cannot be subject to liability.

Brown Jug's first amended complaint alleges that Jane and John Does 1 through 25 "committed repeated acts of *intentional* trespass," that they did so "pursuant to a plan conceived and adopted by the Teamsters and their agents," (emphasis added) and that the Teamsters had refused to remove the picketers from Brown Jug's property when requested to do so. It also alleges that, in accordance with a plan conceived and adopted by the Teamsters, the Does "intentionally blocked, hindered and obstructed access to and egress from the private parking lot and access road at the Wasilla outlet." The complaint thus clearly alleges acts of intentional trespass.

The Restatement section cited by Local 959 refers to reckless or negligent trespass. Under Restatement of Torts § 163 (1965):

> One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.

Thus, if Local 959 or its agents intentionally trespassed on Brown Jug's property, the union may at least be liable for nominal damages. The union has presented no evidence with its summary judgment motion to prove that there was no trespass. An intentional entry onto the land of another constitutes intentional trespass even if the trespasser believes that he or she has the right to be on the land. Restatement (Second) of Torts § 164 (1965). Moreover, once a trespass is established, the burden of proof is on the trespasser to show that it was not willful. *Alaska Placer Co. v. Lee*, 553 P.2d 54, 58 (Alaska 1976). We therefore conclude that Local 959 is not entitled to summary judgment on this issue.[11]

## IV. LOCAL 959's LIABILITY FOR THE ACTIONS OF UNIDENTIFIED PICKETERS

Local 959's final argument in support of summary judgment is that it cannot be held responsible for the actions of picketers whose identities have not been established. The union concedes that it is liable for the actions of its agents who are acting within the scope of their agency. It argues, however, that unless the alleged trespassers are identified, "the officious intermeddler could not be distinguished from the agent acting within the scope of his authority." It claims that since Brown Jug has admitted that it cannot identify any individual picketers who engaged in trespassory activity the union cannot be held liable for their actions.

Brown Jug has submitted evidence that Local 959 organized and directed the picketing that occurred at the Wasilla store. It has also submitted evidence that the persons who allegedly trespassed were participating in the union's consumer boycott picketing and carried Local 959 signs. It argues that a trier of fact could conclude from this evidence that the picketers were agents of the union. We agree.

While it is possible that persons who trespassed on Brown Jug's property

were not representatives of the union, their agency is a question of fact which we must resolve, for purposes of summary judgment, in favor of Brown Jug. *Bowers v. Alaska State Employees Federal Credit Union,* 670 P.2d 1145, 1147 (Alaska 1983). We conclude that Brown Jug may be able to establish an agency relationship between allegedly trespassing picketers and the union through circumstantial evidence, even if it cannot identify the individual trespassing picketers. We further believe that a reasonable trier of fact could conclude that the picketers acted within the scope of their agency if they did trespass on Brown Jug's property.[12] We therefore cannot hold that, as a matter of law, Brown Jug's inability to identify individual trespassers requires that its action be dismissed.

REVERSED and REMANDED.

MATTHEWS and MOORE, JJ., not participating.

---

**12.** In *Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 349 n. 10 (Alaska 1982), we approved the criteria set out in the Restatement (Second) of Agency § 228 (1958) for ascertaining when an agent's conduct is within the scope of his or her agency. Under those criteria, conduct is within the scope of an employee's agency if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.