Timothy L. JENSEN, Rhonda P. Curwen, James L. Dodson and Keith R. Hull, Appellants,

v.

Dan RAMRAS, as personal representative of the Estate of Dorothy Ramras, Appellee.

No. S–2543.

Supreme Court of Alaska.

June 15, 1990.

David Call and Constance Cates Ringstad, Call, Barrett & Burbank, Fairbanks, for appellants.

Ronald E. Noel and Robert A. Sparks, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

I

On December 24, 1985, Alaska Culinary Management, Inc. (ACM) purchased a restaurant, Clinkerdagger, Bickerstaff & Petts, from Restaurants Unlimited, Inc. (RU). In order to purchase the restaurant, the shareholders of ACM, Timothy Jensen, Rhonda Curwen, James Dodson, Keith Hull

and Dorothy Ramras, executed a promissory note in favor of RU for $433,269.39.[1]

The shareholders then entered into the cross-indemnity agreement, which is at issue in this case. In pertinent part, the cross-indemnity agreement provides:

> 2. *Cross Indemnity.* If one or more of the undersigned is required to pay any portion of the debts owed by the corporation for the purchase of Clinkerdagger Bickerstaff & Petts, we agree that each of us who pays less than his full proportionate share of such debt shall indemnify the paying shareholder to the extent of that share, and pay on demand the amount due to the indemnified shareholder. For the purposes of this agreement a shareholder's "full proportionate share" is the same as his percentage of the issued and outstanding stock of the corporation which he owns, in the case of ... Ramras, 8.33 percent....[2]

Dorothy Ramras died on February 16, 1986. On April 29, 1986, RU filed a contingency claim[3] against the estate for approximately $433,000 based on her liability as co-maker on the promissory note. Dan Ramras, as personal representative of the estate, denied RU's contingency claim. RU filed a petition for allowance of its claim against the estate in probate court.

The estate then made a demand on the shareholders to defend and indemnify the estate to the extent that RU's claim exceeded the estate's ownership interest in the corporation, 8.33% of $433,000. The shareholders refused, and the estate filed suit.

The shareholders moved for summary judgment against the estate, and the estate cross-moved for summary judgment. Judge Greene granted the estate's motion for summary judgment[4] and ordered the shareholders to perform the cross-indemnity agreement in the event the probate court required the estate to take action under AS 13.16.495.[5] The court also ordered the shareholders to pay the estate's costs and attorney's fees[6] incurred in the estate's defense against RU's claim. Additionally, the estate was awarded costs and attorney's fees.[7] The shareholders appeal.

## II

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Drake v. Hosley*, 713 P.2d 1203, 1205 (Alaska 1986); *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976). All reasonable inferences of fact must be drawn in favor of the non-moving party. *Brown Jug, Inc. v. International*

1. Under the terms of the promissory note, ACM and the individual shareholders, as makers jointly and severally, agreed to make monthly payments of $4,770.67 from February 1, 1986, until February 1, 1989, when the entire principal of the note and any accrued interest became due. The promissory note was secured by a deed of trust and a security agreement.

2. The agreement states that it was made as of December 24, 1985, among the shareholders. However, the shareholders did not sign the agreement until January 26, 1986.

3. RU filed the claim pursuant to AS 13.16.460 and AS 13.16.495. AS 13.16.495 provides:
   (a) If a claim which will become due at a future time or a contingent or unliquidated claim becomes due or certain before the distribution of the estate, and if the claim has been allowed or established by a proceeding, it is paid in the same manner as presently due and absolute claims of the same class.
   (b) In other cases the personal representative or, on petition of the personal representative or the claimant in a special proceeding

for the purpose, the court may provide for payment as follows:
   (1) if the claimant consents, the claimant may be paid the present or agreed value of the claim, taking any uncertainty into account;
   (2) arrangement for future payment, or possible payment, on the happening of the contingency or on liquidation may be made by creating a trust, giving a mortgage, obtaining a bond or security from a distributee, or otherwise.

4. Final judgment was entered on November 23, 1987.

5. *See supra* note 3.

6. The court found that the appellants were obliged under the terms of the cross-indemnity agreement to pay 91.7% of the estate's costs and attorney's fees.

7. The estate was awarded actual attorney's fees of $8,505.50 and costs of $985.23 for a total judgment of $9,490.73.

*Bhd. of Teamsters, Local 959,* 688 P.2d 932, 934 n. 1 (Alaska 1984).

In this case, the estate contends that the superior court properly ordered specific performance of the cross-indemnity agreement in anticipation of a possible probate court order triggering the shareholders' duty to perform under that agreement. We disagree. Based upon our review of the plain language of the cross-indemnity agreement and the factual context of this case, we conclude that the court's order was both premature and substantively flawed.

When interpreting contracts, the goal is to give effect to the reasonable expectations of the parties. *Mitford v. de Lasala,* 666 P.2d 1000, 1005 (Alaska 1983); *Craig Taylor Equipment Co. v. Pettibone Corp.,* 659 P.2d 594, 597 (Alaska 1983); *Peterson v. Wirum,* 625 P.2d 866, 872 n. 10 (Alaska 1981). The parties' reasonable expectations can be assessed by reviewing "the language of the disputed provision, the language of other provisions of the contract, relevant extrinsic evidence, and case law interpreting similar provisions." *de Lasala,* 666 P.2d at 1005 (quoting *Wirum,* 625 P.2d at 872 n. 10).

In this case, the terms of the indemnity agreement are undisputed. That agreement unambiguously provides that the duty of the cross-indemnitors to pay their proportional shares shall be triggered only when "one or more of the [shareholders] is required to *pay* any portion of the debts owed by the corporation." (emphasis added). The Ramras estate has not yet been required to "pay any portion of the debts owed by the corporation;" indeed, it is undisputed that the corporation is not presently in default on the note. In light of the fact that the holder of the promissory note, RU, has no present right to judgment on the note, we find curious the estate's implicit assertion that it has somehow been "required" to pay that very same debt.

As the shareholders argued in support of their motion for summary judgment:

> The clear terms of the Cross Indemnity Agreement require that the other shareholders indemnify the estate if and

when the estate actually pays an amount in excess of its proportionate share of the debt. *There has been no default in monthly payments due to Restaurants Unlimited and the estate has paid no amount to Restaurants Unlimited.* The Cross Indemnity Agreement contains no provision requiring the other shareholders to defend the estate. The estate has no valid or enforceable claim against the Defendants. *Its cause of action has not and may not ripen.*

(Emphasis added). We agree. On the facts of this case, the court's order of specific performance by the shareholders "in the event the probate court requires the Estate to take action under the provisions of [AS 13.16.495]" was premature. *See Daily Express, Inc. v. Northern Neck Transfer Corp.,* 490 F.Supp. 1304, 1306 (M.D.Pa.1980) ("before an individual may seek indemnity on either an express or implied contract of indemnity, he must at least have had a legal duty to pay to the third party the sum in question").

The order was also incorrect on the merits. Among the "actions" which a probate court may order under AS 13.16.495 is the posting of security for the amount of a debt which the estate might be required to pay upon the happening of some future contingency. AS 13.16.495(b)(2). In this case, the probate court would be permitted, under AS 13.16.495(b)(2), to require that the estate, before distributing its assets to the beneficiaries, post security for the $433,000 debt for which it is jointly and severally liable in the event of a default on the note by the corporation.

Such a requirement by the probate court, however, would not constitute "payment" of the debt under the terms of the cross-indemnity agreement. Rather, it would simply preserve to the creditor the security for which it had contracted during Dorothy Ramras' life; namely, her potential joint and several liability for the debt in the event of default. Until such default occurs, and the security is executed upon by RU, there has been no "payment" by the Ramras estate, and no duties have been

triggered under the cross-indemnity agreement.

While it is true that the security requirements of AS 13.16.495 may cause an undesirable delay in the distribution of the Ramras estate, we believe that the language of the cross-indemnity agreement makes clear that that agreement was intended to protect only against actual losses by one shareholder in excess of his or her proportional interest in the corporation. The agreement was not intended to eliminate all of the potential undesirable consequences which flow from becoming a joint obligor or guarantor on a substantial monetary debt.

To the extent the trial court's order mandated specific performance under the cross-indemnity agreement in the event the probate court required the estate to post a bond pursuant to AS 13.16.495,[8] it was in error. Moreover, the estate's action for specific performance in this case, which preceded not only any default on the underlying obligation, but also any order by the probate court triggering performance under the cross-indemnity agreement, was premature.

Accordingly, the summary judgment in favor of the estate is REVERSED, and this matter is REMANDED with instructions that the superior court enter summary judgment in favor of the shareholders. The superior court's award of attorney's fees is likewise REVERSED.[9]

**8.** We do not rule out the possibility that other "actions" ordered by the probate court under AS 13.16.495 might trigger a duty to perform under the cross-indemnity agreement. *See, e.g.,* AS 13.16.495(a) (providing for payment of "contingent or unliquidated claim" which "becomes due or certain before the distribution of the estate"). However, the proper time to consider the effect of such orders is after they are entered, not before.

**9.** The superior court ordered the shareholders to pay the estate's attorney's fees, both in the present action and in future proceedings on the RU claim. In light of our conclusion that no duty to indemnity has yet arisen under the cross-indemnity agreement, the court's award of attorney's fees based upon that agreement must also be reversed.