Camille (McVey) WILLIAMS, Appellant,

v.

James M. CRAWFORD, Personal Representative of the estate of William R. McVey, deceased, Appellee,

and

Cynthia Gilbert and Rachel Evans, Intervenors/Appellees.

No. S–8030.

Supreme Court of Alaska.

June 18, 1999.

Rehearing Denied Sept. 1, 1999.

Steven D. Smith, Law Offices of Steven D. Smith, P.C., Anchorage, for Appellant.

Ronald L. Bliss, Bliss & Wilkens, LLC, Anchorage, for Intervenors–Appellees Cynthia Gilbert and Rachel Evans.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

## I.  INTRODUCTION

Camille McVey requested enforcement of a property settlement agreement provision

which obliged her ex-husband to name her as the recipient of his civil service pension's survivorship benefits. Because federal regulations render her ineligible for those benefits, we affirm the superior court's decision not to enforce the provision. But because both parties were unaware of the federal regulations when they entered into their agreement, we conclude that equity demands modification of their agreement under Civil Rule 60(b)(6).

## II. FACTS AND PROCEEDINGS

After ten years of marriage, William McVey filed for divorce from his wife, Camille McVey (now Williams). William and Camille bifurcated the divorce proceedings, enabling the court to enter a decree of divorce while reserving the property and debt division issues for later resolution. Camille remarried after entry of the divorce decree.

William and Camille then agreed to divide their property, splitting the marital estate almost in half. The superior court incorporated the parties' property settlement agreement into the divorce decree. Central to this appeal is Paragraph Seven of the agreement:

[William] shall be granted all payments under his Civil Service pension during his lifetime. [Camille] shall be granted survivorship benefits upon [William]'s death equal to one-third the maximum survivorship benefits that may be elected, which means that [Camille] shall receive survivorship benefits at [William]'s death of at least $6,912 per year, or $576 per month. [William] shall elect survivor benefits and shall be responsible for any required premiums or cost to insure [Camille]'s survivorship benefits. This Court shall retain jurisdiction as necessary to enforce these provisions.

When William retired two years later, he discovered that federal regulations made Camille ineligible for the survivorship benefits because she had remarried before age fifty-five. Both parties were unaware of this restriction when they entered into the agreement.

Informed of her ineligibility, Camille moved under Alaska Civil Rule 60(b)(6) to be named the irrevocable beneficiary of William's life insurance policies, the combined value of which totaled $194,000. The superior court granted Camille's motion over William's opposition.

Before complying with the superior court order, William unexpectedly died. William's estate, represented by James Crawford, his testamentary executor, moved in the superior court for relief from the order under Alaska Civil Rules 60(b)(2), (5), and (6). The estate argued that Camille, as beneficiary of William's life insurance policies, would receive significantly more money ($194,000 in life insurance) than she would have received had she been eligible for William's survivorship benefits (either $62,528 or $78,126). William's surviving children, Cynthia Gilbert and Rachel Evans, intervened as interested parties. We refer to the estate and the children collectively as "the estate."

At a hearing on the matter, the superior court agreed with the estate and granted its motion for relief. The court concluded that "the most equitable result is to determine the present value of the [survivorship benefits] ... on the date that the Property Settlement Agreement was entered into...." It valued the benefits at $5,594 plus interest, relying on expert testimony proffered by the estate at the hearing. The court also vacated its prior order naming Camille the irrevocable beneficiary of William's life insurance policies.

Camille moved for a new hearing. The superior court granted Camille's motion and vacated its valuation of Camille's interest because it had not notified the parties that it would make such a valuation at the hearing.

At the rehearing, Camille alleged that Paragraph Seven contained a bargained-for promise by William to provide her with a guaranteed monthly annuity of at least $576. Accordingly she asked the superior court to "enforce" the Property Settlement Agreement by awarding her the benefit of her bargain: the cost of purchasing an equivalent annuity on the market at the date of trial.

The superior court rejected Camille's argument; it determined that Camille had "bargained for and received a marital asset known as the Former Spouse Survivor Annu-

ity, an elective benefit of [William's] civil service retirement plan." The court concluded that it lacked jurisdiction to "enforce" the agreement. It also declined to modify the agreement and provide Camille alternative relief under the provisions of Alaska Civil Rule 60(b) because the parties had asked the court not to do so.

Camille appeals.[1]

## III. DISCUSSION

### A. The Superior Court Correctly Determined that It Lacked Jurisdiction to Grant Camille Relief.

■ A court, pursuant to its inherent power to enforce its decrees, may grant equitable relief to ensure that parties to a property division agreement receive the benefit of their bargain.[2] Therefore, we must decide what the parties bargained for and whether that bargain can be enforced.

#### 1. Standard of review

■ We apply basic contract interpretation principles to the interpretation of a property division agreement incorporated into a divorce decree.[3] We determine de novo whether the requested relief constitutes enforcement of a property settlement agreement or whether it actually adds terms to the agreement.[4]

#### 2. Paragraph Seven is an unenforceable agreement to grant Camille survivorship benefits.

Camille argues that the parties agreed to provide her with a guaranteed annuity and to leave William free to ·choose the means of providing that annuity. She insists that the court can enforce that agreement by ordering the estate to pay her a lump sum equal to the present value of the payments she should have received upon William's death. The estate disagrees; it alleges that Paragraph Seven simply granted Camille survivorship benefits as a means of dividing William's civil service pension.

■ When interpreting contracts, we give effect to the parties' reasonable expectations.[5] Those expectations are discerned from the language of the disputed provisions, other provisions, and relevant extrinsic evidence, with guidance from case law interpreting similar provisions.[6] We depart from the plain language of the contract only if the contract language is ambiguous.[7] "A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations."[8] For instance, in *Wahl v. Wahl*,[9] we departed from the plain language of the property settlement agreement because the parties' use of the term "retirement" did not clarify whether the ex-wife was entitled to retirement benefits earned by her ex-husband after the marriage.[10]

■ But unlike the provision in *Wahl*, Paragraph Seven does not require interpretation to give it meaning. The term "survivorship benefits" is a term of art that has specific meaning in the context of a civil service pension. It is not a term subject to a variety of meanings, nor is it generally employed to imply a guaranteed annuity.

---

1. The children, Cynthia Gilbert and Rachel Evans, were the only parties to submit briefs as appellees.

2. *See Zito v. Zito*, 969 P.2d 1144 (Alaska 1998); *Wahl v. Wahl*, 945 P.2d 1229 (Alaska 1997).

3. *See Zito*, 969 P.2d at 1147 n. 4; *Keffer v. Keffer*, 852 P.2d 394, 397 (Alaska 1993).

4. *See Horchover v. Field*, 964 P.2d 1278, 1281 (Alaska 1998).

5. *See Keffer*, 852 P.2d at 397 (citing *Jensen v. Ramras*, 792 P.2d 668, 670 (Alaska 1990)).

6. *See id.*

7. *See id.* at 397 ("If contract language is unambiguous, the meaning of the contract is decided as a matter of law.").

8. *Id.* (quoting *State v. Fairbanks North Star Borough Sch. Dist.*, 621 P.2d 1329, 1331 n. 4 (Alaska 1981)).

9. 945 P.2d 1229 (Alaska 1997).

10. *See id.* at 1230–31 (agreement provided that "[t]he husband agrees to pay to the wife 33–1/3 percent of his retirement with the Federal government beginning on the first month in which he obtains retirement and continuing each month thereafter.").

Although the parties included specific dollar amounts in Paragraph Seven, the amounts only describe the grant of survivorship benefits; they are not what was granted. It appears that the parties added the specific dollar amounts because the civil service pension program offers pensioners several different options which result in varying levels of survivorship benefits. A letter and testimony by Camille's attorney cited by Camille support this conclusion.

In addition, Camille's interpretation is inconsistent with the divorce proceeding. Pensions earned during marriage are marital property subject to division upon divorce.[11] Thus, it is logical to conclude that Paragraph Seven was only an attempt to divide William's civil service pension, a marital asset. Furthermore, Camille has not provided any explanation as to why she would have received a guaranteed annuity. When she entered into the property settlement agreement she was not dependent upon William for support such that she might need financial protection if he should predecease her. She had already remarried and had her own business.

We conclude that Paragraph Seven is an agreement to elect survivorship benefits for Camille as a means of dividing William's civil service pension. Because Camille remarried before age fifty-five, federal regulations render enforcement of the agreement impossible. Therefore, we affirm the superior court's conclusion that it lacked jurisdiction to award Camille the relief she requested. Because the agreement as it stands cannot be interpreted in Camille's favor, the agreement must be modified if Camille is to be granted relief.

## B. *Camille Is Entitled to Relief under Alaska Civil Rule 60(b)(6).*

### 1. *Standard of review*

We review a superior court decision to grant or deny relief under Rule 60(b) for an abuse of discretion.[12] Under this standard, we will reverse an order only if we are left with a definite and firm conviction based on the whole record that the trial judge has made a mistake.[13]

### 2. *Waiver of Alaska Civil Rule 60(b) relief*

Although Camille's Rule 60(b)(6) motion for relief initiated these post-divorce proceedings, the estate and the superior court interpreted her arguments during the second hearing as a rejection of such relief. For this reason, the court did not grant her Rule 60(b) relief even though it found that the facts entitled her to such relief.

We employ a demanding standard for finding that parties have waived their rights to relief. We do so because the Alaska Rules of Civil Procedure require that courts grant parties the relief to which they are entitled, irrespective of the theory of their pleadings, and to prevent a court from depriving parties of their rights because they have mistaken the nature of the remedies available to them.[14]

Based on our review of the record, we conclude that Camille waived her right to Rule 60(b) relief only contingently in hopes of securing a remedy that she believed could only be granted through enforcement. We cannot conclude that she intended to reject

11. *See* AS 25.24.160(a)(4).

12. *See Hartland v. Hartland*, 777 P.2d 636, 645 (Alaska 1989); *Schofield v. Schofield*, 777 P.2d 197, 202 (Alaska 1989); *Allen v. Allen*, 645 P.2d 774, 776–77 (Alaska 1982).

13. *See Alaska Placer Co. v. Lee*, 502 P.2d 128, 132 (Alaska 1992).

14. *See* Alaska R. Civ. P. 8(f) (requiring a court to construe all pleadings so as to do substantial justice); Alaska R. Civ. P. 54(c) (requiring that every final judgment, except by default, grant the relief to which the party in whose favor it is rendered is entitled even if the party has not demanded such relief in his or her pleading). *See also Griffith v. Taylor*, 937 P.2d 297, 307 (Alaska 1997) (reaffirming that pleadings should be liberally construed to ensure that plaintiff is granted relief to which he or she is entitled); *Jackson v. Nangle*, 677 P.2d 242, 254 (Alaska 1984) (holding that plaintiffs should not be denied damages because they relied on the wrong theory of recovery throughout the suit); *Mitchell v. Land*, 355 P.2d 682, 687 (Alaska 1960) (remanding case for redetermination where superior court denied relief to party whose complaint mistakenly requested wrong relief).

Rule 60(b) relief if that was the only basis for relief.

We note that granting Camille relief under Rule 60(b) is not prejudicial or unfair to the estate. Camille's original motion for Rule 60(b) relief which initiated these post-divorce proceedings fairly notified the estate that she might be eligible for such relief. At each stage of these proceedings the estate has argued Camille's entitlement to Rule 60(b)(6) relief. Finally, Camille, not the court, initiated the request for relief. Camille should not be denied relief on the theory she failed to assert a proper basis for her claim.[15]

Therefore, we reverse the superior court's conclusion that Camille waived her entitlement to relief under Rule 60(b).

### 3. *Alaska Civil Rule 60(b)(1)*

The estate alleges that Camille's mistaken belief that her rights under Paragraph Seven had value could justify relief only under Rule 60(b)(1), i.e., as a "mistake" or "neglect."[16] We disagree.

■ Alaska case law does not clearly pinpoint which claims for relief are properly cognizable under Rule 60(b)(1).[17] However, it appears that when a party is seeking relief due to *the movant's* mistake or neglect the claim falls under Rule 60(b)(1); but when the parties are *mutually* mistaken the claim falls under Rule 60(b)(6).[18]

The superior court concluded that Camille based her claim for relief on a mutual misunderstanding by the parties, and rejected the estate's assertion that Camille's claim for relief was properly cognizable under Rule 60(b)(1). We agree. Throughout the post-divorce proceedings the parties have consistently asserted that they were both unaware of Camille's actual ineligibility for the survivorship benefits. There is no contrary evidence in the record.

### 4. *Alaska Civil Rule 60(b)(6)*

■ Although it concluded that she waived relief under Rule 60(b)(6), the superior court determined that Camille's claim met the standards for relief under that rule. Relief is granted under clause six in "extraordinary circumstances."[19] We have enunciated four factors constituting extraordinary circumstances justifying relief under Rule 60(b)(6) from a property division:

> (1) the fundamental, underlying assumption of the dissolution agreement ha[s] been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [asset in controversy] was the parties' principal asset.[20]

We have never held that all of these factors must be present to grant relief under Rule

---

**15.** *Cf. Clauson v. Clauson,* 831 P.2d 1257, 1259 (Alaska 1992) (granting ex-wife's motion to modify a property division agreement incorporated into a divorce decree under Rule 60(b)(6) even though the ex-wife did not cite a statute or a rule of civil procedure authorizing the superior court to amend the decree).

**16.** Alaska Civil Rule 60(b)(1) relieves a party from a final judgment for "mistake, inadvertence, surprise or excusable neglect." In *O'Link v. O'Link,* 632 P.2d 225, 229 (Alaska 1981), we explained that clause six of Rule 60(b) and the first five clauses of Rule 60(b) are mutually exclusive. Although clause six is a "catch-all" provision, relief under clause six is not available unless the other clauses are inapplicable. *See id.* The fact that relief under one of the first five clauses is time-barred does not render it allowable under clause six. *See also Hartland,* 777 P.2d at 645.

**17.** *See Dickerson v. Williams,* 956 P.2d 458, 465 (Alaska 1998) (stating that our decisions, "like those of [our] federal counterparts, have neither

expressly distinguished the separate grounds for relief under Rule 60(b)(1) nor set forth tests for them").

**18.** *See e.g., Schofield v. Schofield,* 777 P.2d 197 (Alaska 1989) (modifying provisions of divorce decree regarding award of marital home to ex-husband under Rule 60(b)(6) where parties' assumption that ex-husband would care for and raise children proved wrong); *Foster v. Foster,* 684 P.2d 869 (Alaska 1984) (modifying provisions of divorce decree regarding division of marital home under Rule 60(b)(6) where divorced parties' assumption that they could continue to co-own the marital home and live as a family unit proved unworkable).

**19.** *Clauson,* 831 P.2d at 1260–61.

**20.** *Lowe v. Lowe,* 817 P.2d 453, 458–59 (Alaska 1991).

$60(b)(6).$[21] Rather, we view them "as instantiations of the equitable factors required to overcome the principle that, at some point, 'litigation [must] be brought to an end.'"[22]

Camille's claim for relief met the standards for relief under Rule 60(b)(6), because her eligibility for the survivorship benefits was one of the fundamental assumptions underlying the property division. We therefore hold that Camille is entitled to relief under Rule 60(b)(6).

### C. *Equity Demands that Camille Receive Half of the Value of the Marital Portion of William's Civil Service Pension.*

■ Because we hold that the parties agreed to divide William's civil service pension we conclude that Camille should receive one-half of the value of the marital portion of William's civil service pension—valued as of the date the parties entered into the property settlement agreement, August 12, 1992. This is the most equitable result given the particular facts of this case. We remand this valuation question to the superior court for determination.

### D. *It Was Premature to Rule on Camille's Claim to the Proceeds of William's Life Insurance Policies.*

As part of its order, the superior court held that "[Camille] is entitled to no part of any life insurance proceeds which may have been received by Intervenors Cynthia Gilbert and Rachel Evans, as a result of the death of [William]." Camille objects to this holding as premature. She asserts that if this court awards a substantial judgment against William's estate and the estate is unable to satisfy the judgment, then she may have a claim to the insurance proceeds. Moreover, Camille notes that her entitlement to the proceeds is the subject of a separate lawsuit before a different judge.

Although it seems unlikely that Camille will be able to reach the proceeds for satisfaction of this award, we cannot rule out the possibility that Camille may have a legal claim to a portion of the proceeds. The record is devoid of any evidence or argument regarding the life insurance policies. Therefore, we conclude that it was premature to rule on this issue and we vacate this ruling.

### IV. *CONCLUSION*

We AFFIRM the superior court's holding that it lacks jurisdiction to enforce the property settlement agreement. But we REVERSE the denial of Rule 60(b)(6) relief to Camille and REMAND for proceedings consistent with this opinion. We VACATE the order regarding Camille's claim to the insurance proceeds.

**A.A., Appellant,**

v.

---

**21.** *See Clauson,* 831 P.2d at 1260–61.

**22.** *Id.* at 1261 (quoting *Lowe,* 817 P.2d at 459).