Camille WILLIAMS, f/k/a Camille
McVey, Petitioner,

v.

James CRAWFORD, as Personal Repre-
sentative of the ESTATE OF William R.
McVEY, Deceased, Cynthia Gilbert, and
Rachel Evans, Respondents.

No. S–9791.

Supreme Court of Alaska.

Feb. 8, 2002.

As Amended on Denial of Rehearing
June 24, 2002.

Michael W. Flanigan, Walther & Flanigan,
Anchorage, and Steven D. Smith, Law Of-
fices of Steven Smith, Anchorage, for Peti-
tioner.

Ronald L. Bliss, Bliss, Wilkens & Clayton,
Anchorage, for Respondent James Crawford.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, and BRYNER,
Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

This case is before us for the second time. In *Williams v. Crawford,* we remanded with instructions that Camille Williams be awarded "one-half of the value of the marital portion of [William McVey's] civil service pension—*valued as of* the date the parties entered into the property settlement agreement, *August 12, 1992.*" [1] On remand, the superior court awarded Camille one-half of the marital share of the pension benefits that William, who died in June 1995, had actually received. Because this award turned on information—the actual date of William's death—not available on August 12, 1992, when the parties entered into their agreement, we vacate the award and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Camille Williams and William McVey divorced in April 1992. Camille remarried shortly thereafter.[2]

On August 12, 1992 Camille and William entered into a property settlement agreement, which the superior court incorporated into the divorce decree.[3] Paragraph Seven of the agreement stated:

> [William] shall be granted all payments under his Civil Service pension during his lifetime. [Camille] shall be granted survivorship benefits upon [William]'s death equal to one-third the maximum survivorship benefits that may be elected, which

means that [Camille] shall receive survivorship benefits at [William's] death of at least $6,912 per year, or $576 per month. [William] shall elect survivor benefits and shall be responsible for any required premiums or cost to insure [Camille]'s survivorship benefits. This Court shall retain jurisdiction as necessary to enforce these provisions.[4]

When William retired two years later, he discovered that federal regulations made Camille ineligible for survivorship benefits, because she had remarried before age fifty-five.[5] Both parties were unaware of this restriction when they entered into the agreement in 1992.[6] Camille therefore moved under Alaska Civil Rule 60(b)(6) to be named the irrevocable beneficiary of William's life insurance policies.[7] The superior court granted Camille's motion.[8] Before complying with the superior court's order, William unexpectedly died in June 1995.[9]

After a series of superior court proceedings,[10] Camille appealed to us. Because Camille's "eligibility for the survivorship benefits was one of the fundamental assumptions underlying the property division," we held that Camille was entitled to Rule 60(b)(6) relief.[11] We concluded that

> Camille should receive one-half of the value of the marital portion of William's civil service pension—valued as of the date the parties entered into the property settlement agreement, August 12, 1992. This is the most equitable result given the particular facts of this case. We remand this valuation question to the superior court for determination.[12]

On remand, Camille argued that our remand instructions to award Camille "one-

---

1. 982 P.2d 250, 256 (Alaska 1999) (emphasis added).

2. *See id.* at 252.

3. *See id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

10. The history of proceedings before Camille's first appeal is fully set out in *Williams,* 982 P.2d at 252–53.

11. *Id.* at 256. We reversed "the superior court's conclusion that Camille had waived her entitlement to relief under Rule 60(b)." *Id.* at 255.

12. *Id.* at 256.

half of the value of the marital portion of William's civil service pension ... valued as of ... August 12, 1992" required the superior court to value William's pension based only on information that was available as of that date. Thus, Camille proposed that the superior court value William's pension by multiplying William's life expectancy as of August 12, 1992 by the expected annual pension benefit, and discounting to present value. Multiplying the resulting figure by eighteen percent—one-half of the marital share of William's pension—to calculate her share of the pension, Camille's request was for an award of $90,017, plus prejudgment interest.

By contrast, the estate argued on remand that the superior court should value William's pension by simply totaling the pension benefits William received—$58,567—before he died in June 1995.[13] Based on this calculation, the estate valued Camille's share of the pension at $10,700.19.

The superior court agreed with the estate. Its July 18, 2000 order concluded:

> Because this court understands that Camille is entitled to equitable relief, and because the estate's method of valuation is the one which results in a figure most closely resembling the value of an asset that she knowingly bargained for with the assistance of counsel, this court finds that equity demands adoption of the estate's valuation method. This court further finds that adoption of Camille's valuation method would be profoundly and manifestly inequitable.

On July 19, 2000 the superior court denied Camille's motion to vacate the attorney's fees and costs awards it had entered against Camille before we issued our 1999 opinion.

On July 28, 2000 Camille filed a petition for review asking us to review the superior court's July 2000 orders. The estate did not oppose the petition. We granted Camille's petition for review on September 28, 2000, and ordered briefing.[14]

## III. DISCUSSION

### A. Standard of Review

■ "Upon remand of a case by this court it becomes the duty of the lower court to obey the mandate and render judgment in conformity."[15] Whether a lower court on remand has correctly applied our mandate is a question of law which we review de novo.[16]

### B. William's Pension Was Erroneously Valued on Remand.

■ Camille argues that it was error to value William's pension by considering information that was not available on August 12, 1992, the date we instructed the superior court to use in valuing William's pension. Camille notes that on that date, it would have been impossible to determine the amount of pension benefits William would collect before his eventual death. Thus, Camille argues that the superior court should have valued the pension by multiplying William's life expectancy as of August 1992 by the expected annual pension benefit, adjusting that figure for cost of living allowances, and discounting it to present value.

The estate responds that our remand instructions in *Williams* required the superior court to award Camille the amount she would have received if the court had divided William's pension in August 1992. Citing

---

13. William actually received payments totaling only $41,412.20 during his lifetime. But under William's pension plan, a retiree's estate is entitled to a lump sum death payment of "any amount by which [the retiree's] contributions to the retirement fund, plus any interest due, exceed the total amount of the annuity ... paid [to the retiree] and all other eligible survivors...." Because William's contributions to the retirement fund totaled $58,567, an amount greater than the total amount of benefits William received, the estate conceded that William's pension should be valued at $58,567 to account for the lump sum death payment received by William's estate.

14. Alaska R.App. P. 402. Although we accepted this case as a petition for review, the superior court's July 18, 2000 order was essentially a final judgment from which a direct appeal could have been taken. AS 22.05.010; Alaska R.App. P. 202.

15. *Davis v. Hallett*, 630 P.2d 1, 2 (Alaska 1981) (quoting *State v. Salinas*, 362 P.2d 298, 301 (Alaska 1961)).

16. *See Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000) (holding that proper interpretation of court order is question of law).

*McDougall v. Lumpkin,*[17] the estate argues that "trial courts have discretion to distribute retirement benefits to a non-employee spouse through either a qualified domestic relations order (QDRO) or through a lump sum payout."[18] The estate further argues that because there were insufficient marital assets in 1992 to satisfy Camille's claim for a lump sum payout—the marital estate excluding William's pension was valued at approximately $85,000—it would not have been an abuse of discretion to distribute William's pension in August 1992 by entering a QDRO.[19] And although it concedes that " 'an agreement for equitable division of retirement benefits earned during marriage presumptively encompasses survivor benefits,' "[20] the estate notes that a QDRO could not have conferred survivor benefits on Camille, because the federal regulations made her ineligible for survivor benefits. The estate therefore concludes that if the superior court had entered a QDRO in August 1992, Camille would have received one-half of the marital share of any pension benefits that William received before his eventual death in June 1995. Thus, the estate argues that it was not error to award Camille one-half of the marital share of the pension benefits William (and his estate) actually received.

Camille's interpretation of our remand instructions is correct. We instructed the superior court to award Camille one-half of the marital share of William's pension valued as of August 12, 1992, when the parties entered into their agreement. We have previously referred to the value of a defined benefit pension[21] as its actuarial value, determined by multiplying the employee's life expectancy by the expected annual benefit, and discounting it to present value.[22] It is appropriate to apply this same valuation method here. We specified August 12, 1992 as the date of valuation, because we intended to give effect to the parties' agreement to divide the pension benefit as of that date. We did not intend that the value of William's pension would be calculated based on the actual date of his death, a date that was, of course, unknown to the parties on August 12, 1992 when they entered into their agreement.

We therefore conclude that it was error to rely on remand on the actual date of William's death in valuing the pension. Accordingly, we reverse and remand for further proceedings.

On remand, the superior court should determine the actuarial value of William's pension on August 12, 1992 by multiplying William's life expectancy on that date by the expected annual pension benefit, and by discounting to present value. In calculating that value and determining William's life expectancy as of August 12, 1992, however, the superior court may consider evidence relevant to the state of William's health to the extent it bears on his life expectancy and to the extent it was known on August 12, 1992.[23]

 The superior court concluded on remand that it would be inequitable to ignore the amount actually paid on William's pension, an amount dependent on the actual date of his death.

We disagree with that conclusion, for a number of reasons. First, looking to Wil-

---

**17.** 11 P.3d 990 (Alaska 2000).

**18.** *Id.* at 996 (citing *Nicholson v. Wolfe,* 974 P.2d 417, 425–26 (Alaska 1999)).

**19.** *See Nicholson,* 974 P.2d at 425–26 (describing abuse of discretion as relating to a QDRO: "Generally courts have approved of lump sum payouts where there are 'marital assets sufficient to satisfy the non-employee spouse's claim without undue hardship on the employee spouse.' ") (quoting *Laing v. Laing,* 741 P.2d 649, 657 (Alaska 1987)).

**20.** *McDougall,* 11 P.3d at 996 (quoting *Zito v. Zito,* 969 P.2d 1144, 1148 (Alaska 1998)).

**21.** A defined benefit pension provides "systematically for the payment of definitely determinable benefits to the employees over a period of years, usually for life, after retirement. Retirement benefits generally are measured by and based upon such factors as years of service and compensation received by employees." Barth H. Goldberg, Valuation of Divorce Assets § 9.2, at 232 (1984).

**22.** *Foster v. Foster,* 883 P.2d 397, 400 n. 4 (Alaska 1994).

**23.** *See, e.g., Boyd v. Boyd,* 116 Mich.App. 774, 323 N.W.2d 553, 556 n. 2 (1982) ("[W]e do not foreclose the introduction of evidence tending to show that a particular individual is likely to have a longer or shorter life expectancy than is reflected by the statutory mortality tables or, indeed, any mortality table used to determine expected lifespan.").

liam's actual state of health as of August 12, 1992 will minimize the chance of overvaluing the prospective pension benefit. And to the extent William's health status reduces the value of his pension benefit, this approach reduces any apprehension that Camille's ultimate share of the benefit will be disproportionately large compared to the value of the estate apart from the pension benefit. Likewise, to the extent the superior court based its conclusion of inequity on the parties' expectations as of August 12, 1992, William's health status is particularly relevant.

Second, basing the award on the actual date of death leads to inequity not recognized by the superior court. Its conclusion of inequity turns in part on its finding that Camille "knowingly bargained ... with the assistance of counsel" for a nearly equal division of the pension benefit. But to be consistent, if the actual date of death can be taken into account for one purpose, it must also be taken into account for equivalent purposes. Per the superior court's analysis, the values of what the parties respectively bargained for would have to be based on the actual date of death. Knowledge in August 1992 that William would die in 1995 would have made the survivor benefit bargained for by Camille more valuable and would have diminished the value of the benefit bargained for by William. Inconsistent use of the prospective date of death contributed to the inequity perceived by the superior court.

Finally, the superior court does not mention another post-agreement circumstance that bears on the equity resulting from our prior remand instruction. After the parties learned of Camille's ineligibility for survivorship benefits, Superior Court Judge Larry D. Card granted Camille post-judgment relief and ordered William to make Camille the beneficiary of his life insurance policies. William died before complying.

### C. *Denial of Camille's Motion to Vacate Awards of Fees and Costs Was Error.*

We also hold that it was an abuse of discretion to deny Camille's post-remand mo-

tion to vacate the July 1997 awards of attorney's fees and costs. Those awards were based on the March 1997 order that denied Rule 60(b)(6) relief to Camille. When we reversed the March 1997 order in 1999 and remanded to determine the value of the pension as of August 12, 1992, the July 1997 fees and costs awards should have been vacated as a matter of course.[24]

## IV. CONCLUSION

For these reasons, we VACATE the July 18, 2000 decision and order valuing William McVey's pension and the July 19, 2000 order denying Camille's motion to vacate the attorney's fees and costs awards. We REMAND for further proceedings consistent with this opinion.

CARPENETI, Justice, not participating.

---

24. Alaska R. Civ. P. 60(b)(5) (providing that "the court may relieve a party ... from a final judgment, order, or proceeding" if "a prior judgment upon which it is based has been reversed or otherwise vacated").